779 A.2d 1120 (2001)
MILLBROOK TAX FUND, INC., Plaintiff,
v.
P.L. HENRY & ASSOCIATES, INC., a New Jersey corporation; Patrick L. Henry; Derek E. Brooks; and WMC Mortgage Corporation, a California corporation, Defendants, and
Delta Funding Corporation, a New York Corporation and Fairbank Mortgage, Inc., a Connecticut Corporation, Defendants/ Third-Party Plaintiffs,
v.
James L. Watkins, Third-Party Defendant/Fourth-Party Plaintiff-Appellant,
v.
St. Paul Fire and Marine Insurance Company, Fourth-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2001.
Decided September 28, 2001.
*1121 Theodore E. Kyles, Jr., argued the cause for appellant.
John S. Favate, Springfield, argued the cause for respondent (Hardin, Kundla, McKeon, Poletto & Polifroni, attorneys; Mr. Favate, on the brief).
Before Judges PETRELLA, KESTIN and ALLEY.
KESTIN, J.A.D.
This lawsuit, as initially commenced, arose from alleged defaults on mortgage financing. Two of the defendants filed a third party complaint against James L. Watkins alleging negligent appraisal of several properties which were the subject of plaintiff's claim. Watkins, in turn, filed a fourth-party action for coverage and a defense against St. Paul Fire and Marine Insurance Company (St. Paul) under claims-made professional liability insurance policies issued by St. Paul to Watkins.
Both parties in the fourth-party action filed motions for summary judgment. After a plenary hearing on a single issue, the trial court denied Watkins's motion for summary judgment and granted St. Paul's, dismissing the fourth-party complaint. Watkins appeals from the order memorializing that ruling.
We note at the outset that this appeal is interlocutory. A third-party or fourth-party claim is, by definition, part of the lawsuit in which it arises. Disposition of such a claim alone does not dispose of the underlying proceeding. Finality does not attach, because there has been no resolution "both as to all issues and all parties." Pressler, Current N.J. Court Rules, comment 2 on R. 2:2-3 (2001). However, St. Paul has not discharged its responsibility to move for dismissal of the appeal on that ground, see ibid., and the parties have fully briefed and argued the issues presented. We elect, therefore, to regard Watkins's notice of appeal as a motion for leave to appeal, which we grant nunc pro tunc.
Most of the operative facts are undisputed. St. Paul issued a real estate appraiser's professional liability policy to Watkins for a one-year term beginning March 27, 1996. The policy was of the "claims-made" type insuring against "claims or suits for covered loss only when ... first made or brought [ ] while this agreement is in effect or during the limited reporting period." The "limited reporting period" was defined as "one year [from] the end date of this agreement[.]" The policy also provided that "[t]he limited reporting period will apply if this agreement is cancelled or not renewed for any reason. It may not be cancelled once it applies."
On March 27, 1997, the expiration date of the policy, a letter from J.A. Price Agency, Inc., St. Paul's agent, advised Watkins that the policy term had expired *1122 and that he had not applied or paid for a renewal or an "extended reporting period endorsement." The letter informed Watkins that he could either renew the policy or extend the reporting period by paying the annual premium, $595, within thirty days. Watkins submitted a renewal request form dated April 29, 1997, and St. Paul issued a renewal policy for an additional one-year term ending March 27, 1998. The renewal policy, however, provided for a sixty-day limited reporting period rather than the year which had been established in the initial policy.
On August 3, 1997, the renewal policy was cancelled by reason of Watkins's failure to pay the premium. A letter dated August 20, 1997 informed Watkins of the cancellation and offered him an opportunity to purchase an extended reporting endorsement for an amount equal to the annual premium. Watkins made no such choice, and St. Paul subsequently took the position that his rights under the policy "expired 60 days after [its] end date ... August 3, 1997, the date of cancellation."
In April 1998, the claim underlying this suit was made against Watkins based upon appraisals he had made in June 1997. The claim was reported to St. Paul on Watkins's behalf on June 19, 1998. In a letter dated July 11, 1998, St. Paul disclaimed on the basis that the claim was not first made against Watkins and reported to St. Paul during the term of a policy or within the specified sixty-day limited reporting period of the renewal policy.
Watkins took the position that he had never received notification that the renewal policy contained a reduced limited reporting period. He testified to that effect at the plenary hearing the trial court held to receive evidence which would permit the limited issue to be resolved. Specifically, Watkins testified that he had never received from St. Paul any policy other than the initial one. St. Paul relied upon a certification from Rodney L. Olsen, President of J.A. Price, which declared: "I forwarded this policy to Mr. Watkins at the address shown on the application." The certification was submitted at the judge's instruction in lieu of Olsen's live testimony. Based upon the evidence received, the trial court found Watkins's testimony "to be lacking in credibility and not believable," and that he had received the second policy. The judge held, as a matter of law, that Watkins was under an obligation to read the renewal policy and was bound by its terms. The judge specifically determined that Watkins
was not relying upon the one-year limited reporting period that is referenced in the first policy. In fact, I find that he did not know what the limited reporting period is because of two things. First, he didn't read the policy when it was mailed. And secondly, he had no such discussion with counsel [in which, he asserted, he first learned of the limited reporting period in the first policy]. I think that that was an assertion that was made in order to provide a basis for coverage in this case where none existed.
We are bound by the trial judge's findings in this connection, as well as by the conclusions which flow logically therefrom, because they are supported by substantial evidence in the record and implicate credibility determinations. See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
A finding that Watkins was not credible, while bearing upon the issue of fact before the trial court, does not resolve the underlying legal issue, however. Whether or not Watkins received the renewal policy, whether or not he read it, and even whether or not he had read the first policy and was aware of the duration of its limited *1123 reporting period, are all beside the legal point presented.
We begin with a basic proposition correctly identified by the trial court judge: a policyholder is obliged to read the policy he receives and is bound by the clear terms thereof. Therefore, whether Watkins actually read the initial policy or not is of no moment. He was bound by the clearly articulated one-year limited reporting requirement contained therein. That Watkins was so bound in respect of the initial policy also has no direct bearing on the focal legal issue before us in this appeal: the effect of the renewal policy's reduction of the limited reporting period to sixty days.
Although not advanced by Watkins, the pertinent rule of law is one of long standing in this State. In Bauman v. Royal Indem. Co., 36 N.J. 12, 174 A.2d 585 (1961), after reviewing the rules prevailing in other jurisdictions, the Supreme Court, through Justice Jacobs, held:
We fully subscribe to the aforecited decisions and to the elemental principle of business morality and decency which they embody. When an insured purchases an original policy of insurance he may be expected to read it and the law may fairly impose upon him such restrictions, conditions and limitations as the average insured would ascertain from such reading. However, where the stated period of coverage in the original policy is about to expire and the insurance company simply sends a renewal policy for the new period of coverage, the insured, in all likelihood, will not read it over again and may not fairly be expected to do so. Absent notification that there have been changes in the restrictions, conditions or limitations of the policy, the insured is justly entitled to assume that they remain the same and that his coverage has not in anywise been lessened. * * * [The carrier] had the undoubted right, by appropriate alteration in the terms of its policies, to [restrict] coverage in later renewals but, in such event, common fairness as well as legal duty dictated that it call the lessened coverage to the attention of the insureds so that they might suitably protect themselves. This it might readily have done in simple fashion; for example, it might have attached to the renewal policies or forwarded with them, slip notices to the effect that there had been language alterations and that the renewal policies were not intended to provide [the same coverage as previously].
[Id. at 25-26, 174 A.2d 585.]
Clearly, St. Paul did not provide the required notification here, despite several opportunities to do so.
If, irrespective of the state or quality of Watkins's actual knowledge concerning the length of the limited reporting period under the first policy, he was bound by the provisions of that policy, then St. Paul was bound by them as well. If, as a matter of law, St. Paul could not vary a material provision of that policy upon renewal without specifically informing the policyholder of the change, both parties, upon renewal, continued to be bound by the provisions of the first policy. Thus, when a covered event occurred during the term of the second policy before it was cancelled, and was reported within the one-year period provided under the only effective reporting provision binding both parties, Watkins was entitled to coverage and a defense.
We reach this result without prejudice to any other showing either of the parties may rightly make and the legal effect thereof, such as whether Watkins was in fact covered under the renewal policy at all. We have assumed, as the trial court did, that Watkins was in fact covered under the renewal policy until he was notified of the cancellation for lack of premium *1124 payment. We lack sufficient evidence to determine whether coverage in fact existed, but we observe that, at this juncture especially, St. Paul may very well be estopped from asserting the contrary.
As a result of our ruling that St. Paul may not, as a matter of law, avoid its policy obligations, we need not address Watkins's other arguments, including that any finding based upon facts asserted in the Olsen certification was flawed because the certification was inadmissible as hearsay evidence that did not fall within the bounds of any recognized exception. The latter argument is the only facially attractive issue raised by Watkins. Although the Olsen certification, at first blush, seems to be similar to a typical certification of mailing received in such matters, it does not have the aura of reliability that an in-the-course-of-business certificate of mailing is considered to have. Moreover, a direct assertion in the Olsen certification is questionable at best. We refer to the statement: "I forwarded th[e renewal] policy to Mr. Watkins at the address shown on the application." Without some further explanation, we cannot accept that the President of an insurance agency would himself have mailed something so routine as a renewal policy. The statement on its face is untrustworthy as a basis for establishing that a mailing, in fact, occurred and for applying the presumption of receipt that flows therefrom.
By reason of our determination that an underlying principle of law requires a contrary result to that reached by the trial court, the grant of summary judgment to St. Paul, dismissing the fourth-party complaint, is reversed. The matter is remanded.