NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4398-13T4
            A-0275-14T4

PATRICIA C. MYSKA, DAX MORALES
and KATHERINE K. WAGNER,

     Plaintiffs,

and

JOHN B. TODISCO,

     Plaintiff-Appellant,

v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY and AAA
MID-ATLANTIC INSURANCE COMPANY
OF NEW JERSEY,

     Defendants,

and

PALISADES INSURANCE COMPANY,

     Defendant-Respondent.

_____

PATRICIA MYSKA and KATHERINE WAGNER,

     Plaintiffs-Appellants,

and

JOHN B. TODISCO and DAX MORALES,

     Plaintiffs,

v.

> **APPROVED FOR PUBLICATION**
>
> **May 8, 2015**
>
> **APPELLATE DIVISION**

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

    Defendant-Respondent,

and

PALISADES INSURANCE COMPANY and
AAA MID-ATLANTIC INSURANCE COMPANY
OF NEW JERSEY,

    Defendants.

_____

Argued January 20, 2015 - Decided May 8, 2015

Before Judges Lihotz, Espinosa and St. John.[1]

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5136-13.

Eric D. Katz and Stephen T. Sullivan, Jr., argued the cause for appellants (Mazie Slater Katz & Freeman, LLC, and Keefe Bartels, LLC, attorneys; Mr. Katz, David M. Estes, and Mr. Sullivan, on the briefs).

Bruce D. Greenberg and Daniel J. Pomeroy argued the cause for respondent (A-0275-14) New Jersey Manufacturers Insurance Company (Lite DePalma Greenberg, LLC, and Pomeroy, Heller & Ley, LLC, attorneys; Mr. Greenberg, Mr. Pomeroy, and Karen E. Heller, on the briefs).

Robert J. DelTufo (Skadden, Arps, Slate, Meagher & Flom, LLP) argued the cause for respondent (A-4398-13) Palisades Insurance Company.

_____
[1] Judge Espinosa did not participate in oral argument. However, with the consent of counsel, she has joined in this opinion. R. 2:13-2(b).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

On remand from the Supreme Court, we consider these appeals, calendared back-to-back and consolidated for purposes of our opinion. In their putative class action complaint, plaintiffs challenged defendant-insurers' alleged denial of diminution in value damages, as a covered component of the underinsured and uninsured motorist provisions in their respective automobile insurance policies. The interlocutory orders under review were entered upon defendants' motions to dismiss plaintiffs' complaint. Specifically, plaintiffs Patricia C. Myska, Katherine K. Wagner, and John B. Todisco appeal from two March 21, 2014 orders striking their class allegations and dismissing their claims against defendant insurers for violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -195. Prior to discovery, the Law Division judge concluded class certification was improper and the CFA inapplicable. He severed the surviving breach of contract and the implied covenant of good faith and fair dealing claims alleged by Myska and Wagner against defendant New Jersey Manufacturers Insurance Company (NJM); all claims asserted by Todisco against defendant Palisades Insurance Company

(Palisades) were dismissed and the matter was ordered to proceed to arbitration.[2]

Plaintiffs challenge as premature the denial of their class allegations. Further, they argue the judge erred in ordering the dismissal of their CFA claims and for Todisco to proceed to arbitration.

Following our review, we affirm the denial of class certification, agreeing the controversy does not lend itself to a class action because the facts underpinning each plaintiff's claims were dependent upon the individual insurance policy provisions, the distinct vehicle damaged and the specific calculation of damages alleged, which require separate litigation of every action. We also determine the amounts in controversy are not nominal and would not prevent any party's singular pursuit of relief were their claims individually tried. Finally, specific to the Palisades policy, we determine the arbitration provision is unenforceable as it fails to meet the requirements outlined in Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430 (2014), petition for certiorari filed Jan. 21, 2015, and reverse that provision of the Law Division order. Nevertheless, because Todisco failed to file a claim for

---

[2] Plaintiff Dax Morales voluntarily dismissed claims against defendant AAA Mid-Atlantic Insurance Company of New Jersey.

A-4398-13T4

diminution of value damages, his complaint was properly dismissed. Consequently, the Law Division order is affirmed as modified.

## I.

In this section we recite the undisputed facts surrounding each plaintiff's claims taken from the motion record. Because there are two parties insured by NJM, we group together the facts surrounding the claims presented by Myska and Wagner (NJM plaintiffs). We then examine Todisco's allegations against Palisades. Finally, we discuss the motions and the trial judge's findings and conclusions undergirding the challenged orders.

## A.

On July 31, 2011, Myska's 2011 Chevy Equinox suffered physical damage when struck by an uninsured or underinsured tortfeasor. On November 14, 2012, Wagner's 2011 Mercedes Benz E350 was struck by a motorist who ran a red light, causing significant damage requiring structural repair. The tortfeasor was either an uninsured or underinsured motorist (UM/UIM). Myska and Wagner were insured under separate automobile policies issued by NJM. It is agreed their accidents occurred within their respective policy periods and both submitted claims invoking the respective NJM policy provisions.

NJM satisfied claims for repair of physical damage to the NJM plaintiffs' vehicles, in accordance with the terms of their respective policies. Despite repair, Myska and Wagner each maintained their vehicles' values had decreased as a direct result of the accidents. In April 2013, Myska and Wagner separately submitted a second claim for payment, seeking payment for diminution of value.

With respect to the issues raised on appeal, the NJM policies contain identical terms governing payment for diminution of value following conduct by an UM/UIM. Part B of the NJM policies addresses the scope of uninsured motorists coverage, and provides, generally: "[NJM] will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**" arising from "**[p]roperty damage** caused by an accident . . . ." "**Property damage** as used in this endorsement means injury to or destruction of: 1. **Your covered auto.**"

To support their diminution of value claims, Myska and Wagner separately supplied a report from Collision Consulting (CC), quantifying the amount sought. As to Myska, CC inspected her vehicle to "assess the quality and thoroughness of the repairs performed as well as to determine what effect, if any, the loss . . . would have on the value of this vehicle." CC

defined "Inherent Diminishment of Value" as "the loss of value stemming from [an automobile's] accident history[,] as opposed to the diminishment [of value] that could arise from improper or defective/deficient repair." CC suggested:

> [w]hen a reasonable and prudent consumer is given the choice between two vehicles, one that has sustained previous damage and one that had not . . . they will buy the one that has not been involved in an accident if priced the same. For the consumer demand to be equal on the two vehicles, the damaged vehicle, even when properly repaired, must be less in price.
>
> . . . .
>
> It is generally accepted that the proper measure of loss is the difference between the fair market value (FMV) of the property (<u>vehicle</u>) immediately prior to the negligent act and the fair market value after the loss.

Averaging the vehicle's calculated residual value in a third-party sale and after a trade-in, CC determined the average residual diminished value for Myska's vehicle was $14,399. In the report prepared following inspection of Wagner's vehicle, CC set forth the same definitions and utilized the same methodology to calculate the average residual diminished value of Wagner's vehicle as $17,524.

Following its receipt, NJM responded to Myska and Wagner in separate, but identical letters, stating "NJM denies payment of

[the] diminished value claim[s] at this time." The letters explained:

> [T]o the extent that New Jersey law recognizes claims for diminished value, you have failed to offer sufficient proof of diminished value for [the] vehicle. . . .
>
> . . . .
>
> **In support of your claim, you provided a report by [CC]. The report is insufficient to support a claim for monetary loss. Specifically, the report fails to describe the evidence that supports the author's conclusion that [the] vehicle sustained a diminished value for a certain amount. No data is provided for the sales price of comparable vehicles that were sold _after_ being involved in an accident. Also the raw data used by the author to come to his conclusion regarding the diminution in value has not been provided.**

The letter recited the absence of available authority to guide calculation of the diminished value loss, noting:

> [t]he New Jersey Department of Banking and Insurance [(DOBI)] does not recognize diminution in value in its regulations relating to "fair and equitable settlements applicable to property and liability insurance with regard to third[-]party claimants." N.J.A.C. 11.2-17.10. Nor does the [DOBI] recognize the claim for diminished value in its regulations relating to "Adjustment of Partial Losses." N.J.A.C. 11.3-10.3. . . . It is clear that these regulations do not contain a requirement that an insurer pay diminished value damages to a third[-]party claimant. Moreover, there is no relevant New Jersey statute, addressing this issue.

In addition to the above, the Model Civil Jury Charges, which summarize relevant New Jersey law, state that if a vehicle is not deemed a total loss "and it can be repaired at a cost less than the difference between its market value before and its market value after the damage occurred[,] the plaintiff's damages would be limited to the cost of repairs." Model Civil Jury Charge 8.44. Additionally, motor vehicle appraisal guides[,] including the NADA Official Used Car Guide and Kelley's Blue Book do not consider prior accidents as a factor when calculating their published figures. Based upon the information provided, there is insufficient evidence to prove that [plaintiff] sustained a diminished value loss that would justify payment over and above the cost of repairs.

Lastly, the time at which the alleged damage would be capable of true measurement is unknown. Thus, until the vehicle was sold, the measurement of the alleged diminution claim would be uncertain. Assuming that a damaged vehicle has been properly repaired with high quality replacement parts, it is reasonable to encounter a situation where an expert would state that the vehicle has not decreased in value except for the passage of time between the accident, and repair of the vehicle and the sale of the vehicle.

Neither Myska nor Wagner replied to NJM's letter and neither submitted the requested data used by CC to support its damage calculations. Instead, the NJM plaintiffs filed a putative class action complaint on behalf of NJM insureds, alleging the insurer's actionable denial of payment for diminution of value represented a breach of contract, breach of

the covenant of good faith and fair dealing, and violation of the CFA. On behalf of the class, the NJM plaintiffs sought to "put an end to NJM's systematic practice of denying, obfuscating coverage of, or otherwise avoiding claims by New Jersey consumers for the diminution of value of insured vehicles resulting from third-party UM/UIM." Further, the NJM plaintiffs asserted NJM failed to disclose the right to submit third-party UM/UIM diminution of value claims at the time their respective repair claims were made.

### B.

Todisco insured two automobiles under a policy issued by Palisades. A 2007 Bentley Continental, covered under the policy, was involved in an accident with an uninsured or underinsured tortfeasor on June 13, 2012. Todisco submitted a claim to repair the damage sustained to the Bentley, which Palisades paid in accordance with the policy terms.

Subsequently, in a February 15, 2013 letter to Palisades, Todisco advised Palisades he was "making a claim for diminished value damages" and requested the insurer's "position with respect to a diminished value claim," pursuant to the policy's UM/UIM coverage provisions. The letter did not recite the amount of damages suffered or a method to determine the associated loss.

The Palisades policy provisions contain similarities to the NJM policy, as both contracts are based on the Standard New Jersey Automobile Policy (as distinguished from a Basic Automobile Liability Policy),[3] but the documents are not identical. Nothing in the Palisades policy explicitly precludes recovery for diminution of value damages.

## C.

NJM moved to dismiss the NJM plaintiffs' complaint for failure to state a claim for relief, contending the NJM policies provided coverage for diminution of value damages, if supported. NJM argued it did not "fail to pay" the claims; plaintiffs simply failed to submit "adequate proof to support the substantial diminution of value damages claimed _via_ the opinion of Collision Consulting"; therefore, there was no breach of contract. NJM also asserted New Jersey law does not impose a duty to instruct insureds regarding policy provisions; the CFA does not govern disputes regarding payment of insurance benefits; and Myska and Wagner "provide[d] no basis supporting either reformation . . . or . . . injunctive relief." Finally, the notice of motion also requested "the [c]ourt enter an order severing the action by plaintiffs Wagner and Myska against [NJM]

---

[3]   _See_ N.J. Dept. of Banking & Ins., http://www.state.nj.us/dobi/division_consumers/insurance/standardpolicy.html (last visited Apr. 15, 2015).

11

from the action brought by . . . Todisco," arguing joinder of unrelated claims against multiple unrelated insurance companies was improper.

During argument, NJM acknowledged the policy provided for reimbursement of all legal available damages, which would include diminution of value damages; however, the proofs by Myska and Wagner were deficient. Plaintiffs opposed this position, suggesting NJM was attempting to prematurely seek summary judgment.

Palisades filed its own motion to dismiss Todisco's claims, asserting different reasons. Palisades maintained Todisco never submitted a claim for diminution of value damages or identified a policy provision that was breached. Further, Palisades argued coverage disputes must be determined in an arbitral forum.

The Law Division judge entered two orders on March 21, 2014, accompanied by a written opinion. The first, regarding NJM, granted in part and denied in part, its requested relief. Specifically, the judge found certain allegations legally untenable. He noted the law imposed no duty upon insurers to advise plaintiffs of policy provisions or explain clearly worded provisions of a policy once the policy was issued. Accordingly, claims premised on the failure to advise plaintiffs of a right to pursue damages arising from a proven diminishment of value

lacked merit. He also concluded claims contending failure to pay benefits were not within the scope of the CFA. Further, the judge dismissed plaintiffs' demands for reformation, injunctive relief, and punitive damages, after finding the allegations were "nothing more than conclusory statements[,] which are directly contradicted by documents that are integral to the [c]omplaint." However, the judge allowed the NJM plaintiffs' breach of contract claims to proceed "individually," after finding "the factual differences between the parties required a separation of the claims."

As to these claims, the judge denied class certification, concluding a class action would be unsuitable based on the nature of the significant factual differences regarding the allegations supporting each plaintiff's action. The judge found plaintiffs' "common allegation that [they] suffered harm because they did not receive coverage for the diminution of value of their vehicle[s] is contradicted by the unique circumstances surrounding the[ir] different claims." He noted by way of illustration, NJM's proofs showing the NJM plaintiffs' claims were not denied, merely unsubstantiated, and, as asserted by Palisades, Todisco never filed such a claim.

The second order addressed Palisades' requested relief, which was granted. The judge dismissed Todisco's complaint and

compelled him to arbitrate his claims "in accordance with the arbitration provisions contained in his" insurance policy. The judge characterized Todisco's letter as a "mere inquiry" and found it did not "afford[] Palisades the opportunity to evaluate a bona fide claim under the terms of the . . . policy and respond to it." Further, the Palisades contract contained an agreement to arbitrate all issues involving the insured's and insurer's "relationship and any disputes occurring between them."

The NJM plaintiffs appealed from the provisions of the March 21, 2014 order striking the class allegations and dismissing their CFA claims (A-0275-14). Todisco separately appealed from the dismissal of his claims in favor of complying with the policy's arbitration clause (A-4398-13). Plaintiffs moved for leave to appeal, which was denied by this court. By order dated September 9, 2014, the Supreme Court granted leave for plaintiffs to appeal and summarily remanded the matter to this court for review of the merits.

## II.

Some of the arguments raised in the separate appeals are identical, and others are distinctly based upon claims under an individual insurance policy. In addressing the various issues

presented, we join claims common to both appeals. Before doing so, we set forth the standards guiding our review.

A.

The orders under review resulted from defendants' respective motions to dismiss, filed pursuant to Rule 4:6-2(e).

> The standard traditionally utilized by courts to determine whether to dismiss a pleading for failure to state a claim on which relief may be granted is a generous one. As we have explained, "[i]n reviewing a complaint dismissed under Rule 4:6-2(e) our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., [116 N.J. 739,] 746 [(1989)]. The essential test is simply "whether a cause of action is 'suggested' by the facts." Ibid. (quoting Valentzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).
>
> [Green v. Morgan Props., 215 N.J. 431, 451-52 (2013) (alteration in original).]

Where a "complaint states no basis for relief and . . . discovery would not provide one, dismissal of the complaint [under Rule 4:6-2] is appropriate." Cnty. of Warren v. State, 409 N.J. Super. 495, 503 (App. Div. 2009) certif. denied, 201 N.J. 153, cert. denied, 561 U.S. 1026, 130 S. Ct. 3508, 177 L. Ed. 2d 1092 (2010).

An additional overlay results because plaintiffs seek review as a class action. See R. 4:32-1 (stating requirements for maintaining a class action). "A class action, generally,

15

permits one or more individuals to act as plaintiff or plaintiffs in representing the interests of a larger group of persons with similar claims." Lee v. Carter-Reed Co., 203 N.J. 496, 517 (2010). The "action permits 'claimants to band together' and, in doing so, gives them a measure of equality against a corporate adversary, thus providing 'a procedure to remedy a wrong that might otherwise go unredressed.'" Id. at 517-18 (quoting In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 424 (1983)).

In our review of each of these questions, we owe "no deference to the trial court's conclusions." Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div.), certif. denied, 208 N.J. 368 (2011). Rather, we must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Green, supra, 215 N.J. at 451-52 (citation and internal quotation marks omitted). See also Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 386 (2007) (holding questions of law related to class certification are reviewed de novo).

Common to both appeals is whether class certification was prematurely denied. Plaintiffs argue the determination to strike the class allegations prior to discovery, after finding the claims were unsuitable to proceed as a class action, was error. They also contend the court "overstepped its bounds" in analyzing the issues, by considering documents not referenced in the complaint and drew improper inference from this document review.

"Class certification decisions rest [o]n the sound discretion of the trial court." Muise v. GPU, Inc., 371 N.J. Super. 13, 31 (App. Div. 2004) (citing In re Cadillac, supra, 93 N.J. at 437). "The analysis must be 'rigorous' and 'look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law.'" Local Baking Prods., Inc. v. Kosher Bagel Munch, Inc., 421 N.J. Super. 268, 274 (App. Div.) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 106-07 (2007)), certif. denied, 209 N.J. 96 (2011).

In reviewing the grant or denial of class certification, "an appellate court must ascertain whether the trial court has followed [Rule 4:32-1(b)(3)'s] standards and properly exercised its discretion." Carter-Reed, supra, 203 N.J. at 506. An "abuse of discretion . . . arises when a decision is made

without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (citation and internal quotation marks omitted)).

The provisions of Rule 4:32-1 obligate putative plaintiffs to satisfy general and specific requirements. Local No. 68 Welfare Fund, supra, 192 N.J. at 382; Iliadis, supra, 191 N.J. at 106. See also Rule 4:32-1(a), (b). Prerequisites for class certification include: numerosity, commonality, typicality, and adequacy of representation. Carter-Reed, supra, 203 N.J. at 511-512. Class certification is appropriate only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> [R. 4:32-1(a).]

"In addition to meeting the initial requirements of Rule 4:32-1(a), the party seeking to certify the class must also satisfy one of the three criteria enumerated in Rule 4:32-1(b)." Varacallo v. Mass. Mut. Life Ins. Co., 332 N.J. Super. 31, 41-42 (App. Div. 2000). These considerations examine "not only the interests of class members and other parties, but also the

effect of class certification on efficient judicial management,"

In re Cadillac, supra, 93 N.J. at 436, and include: (1) whether individual lawsuits present risk of inconsistent judgments; (2) the appropriateness of injunctive relief as to the class as a whole; or (3) whether common questions or law and fact predominate over individualized questions and a class action is superior to other available methods of adjudication. Muise, supra, 371 N.J. Super. at 30. Regarding the last provision, pertinent findings should be made on:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability in concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.
>
> [R. 4:32-1(b)(3).]

In short, "the movant must demonstrate both the predominance of the common issues and the 'superiority' of a cause of action over other available trial techniques." Saldana v. City of Camden, 252 N.J. Super. 188, 196 (App. Div. 1991).

"'New Jersey courts . . . have consistently held that the class action rule should be liberally construed.'" Carter-Reed, supra, 203 N.J. at 518 (alteration in original) (quoting

19

<u>Iliadis</u>, <u>supra</u>, 191 <u>N.J.</u> at 103). Plaintiffs seeking class certification have the burden of proof as to each of the rule's requirements. See <u>Muise</u>, <u>supra</u>, 371 <u>N.J. Super.</u> at 32.

## C.

Plaintiffs' initial challenge to the order striking class certification focus on the timing of the judge's determination. Plaintiffs assert the judge erred in denying class certification prior to discovery, incorrectly expanded review of documents outside the four corners of the complaint, and entered the order despite notice.

## 1.

No precise procedures are established for granting or denying class certification at the incipient stage of litigation. Rather, our rules state "the court shall, at an early practicable time, determine by order whether to certify the action." <u>Rule</u> 4:32-2(a). This language, adopted in 2007, "is intended to make clear that the class determination need not be the first event in the court's consideration of [an] action." Pressler & Verniero, <u>Current N.J. Court Rules</u>, comment 3.2.2 on <u>R.</u> 4:32-2 (2015).[4]

---

[4] The prior iteration of this requirement provided: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." <u>Riley v. New Rapids Carpet Center</u>, 61
(continued)

A-4398-13T4

Citing dicta from <u>Riley</u>, plaintiffs suggest it is well established that class allegations may not be struck in the course of a pre-trial motion to dismiss. See <u>Riley</u>, <u>supra</u>, 61 <u>N.J.</u> at 228 ("[A] court should be slow to hold that a suit may not proceed as a class action."). Plaintiffs suggest the "circumstances in <u>Riley</u>, where premature dismissal was reversed, are identical, if not less egregious than, those in this case."

Although we agree courts must liberally view class allegations and allow reasonable inferences to be gleaned from the complaint's allegations and search for a possible basis for class relief so as to avoid premature dismissals, <u>Carter-Reed</u>, <u>supra</u>, 203 <u>N.J.</u> at 505-06, 518, we do not abide a view that precludes dismissal, following the required analysis, when a court determines alleged claims do not properly lend themselves to class certification. See <u>Riley</u>, <u>supra</u>, 61 <u>N.J.</u> at 225 (holding "a class action should lie unless it is clearly infeasible").

In <u>Riley</u>, the Court examined the pre-trial denial of class certification for bait-and-switch type consumer fraud claims,

_____

(continued)
<u>N.J.</u> 218, 228 (1972). The Court commented on this rule noting, "the draftsman was mindful of the difficulties involved and of the latitude required. It would be rare that a decision to deny a class action should be made on the face of the complaint." <u>Ibid.</u>

where the defendants advertised a carpet deal at a special low price, accompanied by a free gift, and when the plaintiffs attempted to take advantage of that deal, were redirected and upsold a more expensive product. Id. at 222. The Court considered the complaint and noted:

> No doubt a consumer class action may hold problems not found in an antitrust action or a stock fraud suit where some rather precise act or omission radiates harm throughout the class. If the representations to consumers are so diverse that all of the individual transactions must be tried, there would be no economy of effort and expense and the litigation would be unmanageable.
>
> [Id. at 227.]

Under these circumstances, the Court found pre-trial dismissal of the class allegations erroneous because the plaintiffs' complaint included "a showing of a possible basis for class relief" as to whether the defendants "ever intended to sell carpet on the terms advertised." Id. at 229. Elaborating, the Court instructed:

> When, as here, the approach to the consumer appears to be sharp or slick, a plaintiff should be permitted to seek relevant data from [the] defendants so that an informed decision may be made on the class-action issue. Here, for example, it might be revealing if [the] plaintiffs were permitted to inquire of [the] defendants as to how many sales were made on the advertised basis and how many "free gifts" were delivered. The answers might support the charge that a

> bait-and-switch tactic was employed, or as suggested by the positions taken by [the defendants], that the advertisement was merely a pretext to obtain salable leads of persons in the market for carpet.
>
> [Ibid.]

Contrary to plaintiffs' suggestions in this matter, the test does not merely turn on the stage of the litigation. Rather, dismissal is dependent on the nature of the claims and the propriety of their presentation as a class action, in accordance with the provisions of Rule 4:32-1. We flatly reject plaintiffs' urging to impose a bright-line rule prohibiting examination of the propriety of class certification until discovery is undertaken. See e.g., Local Baking Products, supra, 421 N.J. Super. at 280 (upholding dismissal of class certification when putative class could not meet "the more demanding criteria of predominance and superiority" (citation and internal quotation marks omitted)).

After accepting as true all of the allegations in a complaint, and considering the issues in the context of a challenge to class certification, the central inquiry remains: whether the putative class raises "questions of law or fact common to the members of the class [that] predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for the fair and efficient adjudication of the controversy." R. 4:32-1(b)(3).

Guided by that pronouncement, we turn to the facts at hand. Plaintiffs defined the proposed class in their complaint as:

> "All persons currently insured or previously insured by [NJM], Palisades . . . at any time during the six (6) year period from the date of filing of this lawsuit who presented UM/UIM, physical damage claims for their insured vehicles arising from vehicular collisions or other accidental losses and were denied coverage or compensation, or did not otherwise receive coverage or compensation, for diminution of value of their vehicles in response to these claims."

The questions of law or fact common to all members are alleged as:

> (a) Whether [defendants] have issued automobile insurance policies that expressly prohibit class members from recovering for diminution of value of their vehicles arising from third-party UM/UIM vehicular collisions or other accidental losses;
>
> (b) Whether [defendants] have issued . . . policies that are ambiguous or silent with regard to [diminution of value coverage] . . . arising from third-party UM/UIM vehicular collisions or other accidental losses;
>
> (c) Whether [defendants] . . . have improperly denied compensation for diminution of value in response to third-party UM/UIM physical damage claims . . . ;
>
> (d) Whether [defendants] have engaged in a pattern or practice of failing to pay for diminution of value;

24

> (e) Whether [defendants] breached, and
> continue to breach, their contractual
> obligations by not, inter alia, paying for
> diminution of value claims.

The foundation of these allegations is breach of each plaintiff's respective insurance contract. Although, as plaintiffs suggest, insurance contract interpretation is a "[p]urely legal question," Badiali v. N.J. Mfrs. Ins. Group, 220 N.J. 544, 555 (2015), that alone will not permit these matters to proceed as a class action. The significant legal conflict centers on the terms of each insurance contract. Here, the contracts of the actual and presumed putative plaintiffs are not identical.

There is no statutory or other regulatory directive which mandates the use of a standard form of automobile liability policy. Automobile policy provisions, although reviewed by the DOBI, remain individualized between an insurer and insured. Accordingly, there is no common provision directed to payment of diminution of value damages payable as a result of UM/UIM claims. The lack of uniformity in such contract coverage is easily illustrated by the two named defendant-insurers, whose respective policies contain divergent provisions governing such claims.

Thus, an inquiry into the breach of such contracts may be as varied as the number of insurers that issue policies and the

vehicles those policies cover. Even when policies include similar provisions, such as the UM/UIM provisions in the NJM plaintiffs' policies, the facts and circumstances surrounding the claim and an insured's compliance with the policy terms to submit claims remains unique.

Typicality among defendants to the putative class allegations is also absent. NJM acknowledged diminution of value damages were included within the scope of the stated coverage,[5] and the NJM plaintiffs' claims were not denied, just not paid because they lacked sufficient proof to support the underlying basis for the amount sought. On the other hand, Palisades argued Todisco never filed a claim asserting such coverage, and if he had, that coverage dispute was subject to mandatory arbitration (an issue we separately analyze below).

The individualized facts and circumstances of the relationship between each insurer and its insured also precludes predominance. R. 4:32-1(b)(3) (stating the class certification

---

[5] The record contains a form of NJM policy but not plaintiffs' actual policies. We have identified the UM/UIM provision cited to govern plaintiff's claims. We also observe Part D of this document, entitled "**COVERAGE FOR DAMAGE TO YOUR AUTO**," generally outlines the available coverage for, and limitations on liability to, payments for vehicle damage. Under a subsection entitled "**EXCLUSIONS**," the form policy expressly states "We will not pay for . . . **Loss to your covered auto . . . due to diminution in value**." Because no party has discussed the impact, if any, of this clause upon the UM/UIM claim, we will not undertake such consideration.

is appropriate when the court finds the questions of law or fact common to the class predominate over any questions affecting only individual members). We recognize predominance does not require "all issues be identical among class members or that each class member be affected in precisely the same manner." Local No. 68 Welfare Fund, supra, 192 N.J. at 383 (citing Fiore v. Hudson Cnty. Employees Pension Comm'n, 151 N.J. Super. 524, 528 (App. Div. 1977)). However, the individualized nature of the parties' automobile insurance contracts and the circumstances giving rise to their respective claims for reimbursement predominates over possible common questions among class members. Moreover, contrary to plaintiffs' suggestion, the insurance contracts between the different plaintiffs and their respective insurers were not substantially similar. Therefore, neither the commonality requirement of R. 4:32-1(a)(2) nor the predominance provision of R. 4:43-1(b)(3) were satisfied.

Plaintiffs also urge "the trial court's unsolicited elimination of the putative class denied . . . the 'main thrust of the litigation' because the cost of litigating each claim individually outweighs the amount of the claim." See Riley, supra, 61 N.J. at 221. We have defined the principle this way:

> Class actions are generally appropriate where individual plaintiffs have "small

claims" which "are, in isolation, too small . . . to warrant recourse to litigation . . . ." Iliadis, supra, 191 N.J. at 104 (internal quotation marks omitted). In such instances, "the class-action device equalizes the claimants' ability to zealously advocate their positions." Ibid. That equalization principle remedies the incentive problem facing litigants who seek only a small recovery. "In short, the class action's equalization function opens the courthouse doors for those who cannot enter alone." Ibid.

[Local Baking Prods., supra, 421 N.J. Super. at 280 (alteration in original).]

Here, the damage claims asserted by the NJM plaintiffs' are not nominal. Myska's claim of $14,399 approaches the maximum Special Civil Part $15,000 cognizable limit, R. 6:1-2(a)(5), and Wagner's claim of $17,524 clearly exceeds that amount. Certainly such demands are neither "too small . . . to warrant recourse to litigation" nor so insignificant to preclude legal representation forcing plaintiff to enter the courthouse alone. Iliadis, supra, 191 N.J. at 104 (alteration in original) (citation and internal quotation marks omitted). We reject as unfounded the suggestion that the size of the claims proffered by Myska and Wagner made remedies illusory because each "individual loss [was] too small to warrant a suit." Muhammad v. Cnty. Bank of Rehoboth Beach, Del., 189 N.J. 1, 16 (2006).

Following our review, we find the motion judge's analysis of plaintiffs' allegations as individual to each plaintiff, such

that the factual basis for each claim was dependent on a specific individual experience and not common to the claims of the other plaintiffs, is supported by the record. This separateness of each claim precludes class certification. Our review confirms the record supports the judge's findings and his conclusion to deny class certification to the parties' distinct claims for damages resulting from separate accidents covered under their individualized policies. Further, the amount of damages at issue for each claim is not so small as to disincentivize suit.

2.

Related to this issue is plaintiffs' attack on the scope of documents reviewed by the court in performing its analysis of the class certification issue. Plaintiffs argue the judge erroneously considered documents outside the complaint. We reject this contention as meritless.

In its review, a court may consider documents specifically referenced in the complaint "without converting the motion into one for summary judgment." E. Dickerson & Son, Inc. v. Ernst & Young, LLP, 361 N.J. Super. 362, 365 n.1 (App. Div. 2003), aff'd, 179 N.J. 500 (2004). "In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that

29

form the basis of a claim.'" <u>Banco Popular N. Am. v. Gandi</u>, 184 <u>N.J.</u> 161, 183 (2005) (quoting <u>Lum v. Bank of Am.</u>, 361 <u>F.</u>3d 217, 222 n.3 (3d Cir.), <u>cert. denied</u>, 543 <u>U.S.</u> 918, 125 <u>S. Ct.</u> 271, 160 <u>L. Ed.</u> 2d 203 (2004)). "It is the existence of the fundament of a cause of action in those documents that is pivotal; the ability of the plaintiff to prove its allegations is not at issue." <u>Ibid.</u>

Here, in addition to examining the complaint, the judge considered the insurance policies, correspondence from NJM and Palisade's purportedly denying the diminution of value claims, which attached the CC reports presented by Myska and Wagner. Although the complaint does not describe those documents in detail, its provisions certainly reference them, and we find no error in the judge's review when determining the motions. <u>See</u> <u>Rapaport v. Robin S. Weingast & Assocs.</u>, 859 <u>F. Supp.</u> 2d 706, 714 (D.N.J. 2012) ("[W]hen allegations contained in a complaint are contradicted by the document it cites, the document controls." (citation and internal quotation marks omitted)).

We also reject as unavailing plaintiffs' suggestions the judge, when reviewing these additional documents, improperly drew inferences favoring NJM and Palisades, rather than indulgently granting all favorable inferences to them. Thus, plaintiffs argue he improperly resolved key factual disputes,

such as whether plaintiffs submitted claims for diminution of value and whether defendants denied those claims, in favor of NJM and Palisades.

We reject this argument, as the language in the documents is clear and not susceptible to more than one interpretation. NJM's correspondence, after considering the NJM plaintiffs' respective demands, stated payment would not be issued "at this time" and specified additional documentation required for further review and consideration. Todisco's letter to Palisades did not articulate the nature or amount of his purported loss.

3.

Plaintiffs next contend the trial court took sua sponte action and violated their rights of due process by striking their class claims without proper notice. We are not persuaded.

"[D]ue process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Poritz, 142 N.J. 1, 106 (1995). As plaintiffs point out, courts must guard against sua sponte action or "resort[ing] to a 'shortcut' for the purposes of 'good administration' and circumvent[ing] the basic requirements of notice and an opportunity to be heard." Klier v. Sordoni Skansa Constr. Co., 337 N.J. Super. 76, 84-85 (App. Div. 2001). See Curzi v. Raub, 415 N.J. Super. 1, 25-26, 28 (App. Div. 2010).

Here, in addition to seeking dismissal for failure to state a claim, NJM sought dismissal of the complaint's class allegations and demands for "[c]ertification of this action as a class pursuant to [Rule] 4:32." Specifically, NJM argued the NJM plaintiffs' complaint presented no actionable allegations because their claims had not been denied, but rather unpaid pending further support. Palisades maintained Todisco had not submitted a claim. Alternatively, NJM requested the immediate severance of any surviving claims by Myska and Wagner. The notice of motion and the supporting pleadings placed plaintiffs on notice their assertions of class certification were attacked as improper and unwarranted. We find no due process deprivations.

D.

Plaintiffs assert the judge erred in concluding the CFA did not apply to the denial of insurance claims, arguing he failed to recognize their claims alleged unconscionable business practices, which are cognizable under the CFA. We disagree.

"The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." Lemelledo v. Benefit Mgmt. Corp., 150 N.J. 255, 264 (1997). "Accordingly, our courts have invoked it to cover a wide variety

32                                                    A-4398-13T4

of practices." Ibid. In Lemelledo, the Court considered whether the CFA applies to commercial lenders who increase the principal amount of a loan by adding loan-related services, such as credit insurance, that the borrowers may not want. Id. at 259-60. In discussing the CFA's application, the Court stated "although several lower courts have held that the payment of insurance benefits is not subject to the CFA, our reading of the CFA convinces us that the statute's language is ample enough to encompass the sale of insurance policies as goods and services that are marketed to consumers." Id. at 265 (citations and footnote omitted). Accordingly, the CFA was held applicable to insurance sales practices. Id. at 266.

"To prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Zaman v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). Under the CFA an "unlawful practice" is defined to include

> unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real

33

estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.

[N.J.S.A. 56:8-2.]

Further, "[t]he Legislature included 'services' within the definition of 'merchandise,' a term that encompasses 'any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale.'" D'Agostino v. Maldonado, 216 N.J. 168, 187 (2013) (quoting N.J.S.A. 56:8-1(c)). Thus, although the CFA must be interpreted "'broadly to protect consumers from a wide variety of abhorrent deceptive practices,' it has meaningful limits." Ibid. (quoting Lee v. First Union Nat'l Bank, 199 N.J. 251, 258 (2009)).

While, we agree Lemelledo authorizes pursuit of a private right of action against an insurance company for "fraudulent, deceptive or other similar kind of selling or advertising practices," Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271 (1978), there are limits on the statute's application. For example, the CFA is not appropriate where a regulatory scheme "deal[s] specifically, concretely, and pervasively with [a] particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes." Lemelledo, supra, 150 N.J. at 270.

Further, while the CFA "encompass[es] the sale of insurance policies as goods and services that are marketed to consumers," it was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits. Id. at 265. See Nikiper v. Motor Club of Am. Cos., 232 N.J. Super. 393, 400-01 (App. Div.), certif. denied, 117 N.J. 139 (1989); In re Van Holt, 163 F.3d 161, 168 (3d Cir. 1998) ("The mere denial of insurance benefits to which the plaintiffs believe[] they [are] entitled does not comprise an unconscionable commercial practice.").

The NJM plaintiffs assert no facts alleging NJM fraudulently procured their agreement for coverage. In fact, the availability of coverage under the policy purchased was conceded. Therefore, the essence of plaintiffs' causes of action involve whether they filed and supported a claim for a specified amount of benefits under their respective policies — issues which fall outside the scope of the CFA. Kuhnel v. CNA Ins. Cos., 322 N.J. Super. 568, 582 (App. Div. 1999), certif. denied, 163 N.J. 12, cert. denied, 531 U.S. 819, 121 S. Ct. 61, 148 L. Ed. 2d 27 (2000) See also Pierzga v. Ohio Cas. Group of Ins. Cos., 208 N.J. Super. 40, 47 (App. Div.), ("[T]he insurance industry is already heavily regulated by the Department of Insurance[, making] exclusive regulatory jurisdiction of

insurance companies, at least with respect to the payment of claims, . . . within the Department of Insurance."), certif. denied, 104 N.J. 399 (1986).

We are not persuaded by plaintiffs' reliance on Weiss v. First Unum Life Insurance Company, 482 F.3d 254 (3d Cir. 2007). In that matter, the plaintiff's suit claimed the defendant discontinued payment of his disability benefits as part of a racketeering scheme involving an intentional and illegal policy of rejecting expensive payouts to disabled insureds. Id. at 256. After review, the court reinstated the plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. §§ 1961-1968. Id. at 269. In its analysis, the court examined whether the plaintiff's claim was covered by the CFA, which could undercut a RICO suit. Id. at 265-66. Noting it did "not share the District Court's conviction that the CFA and its treble damages provision are inapplicable to schemes to defraud insureds of their benefits," id. at 266, the Third Circuit concluded "[t]he CFA covers fraud both in the initial sale (where the seller never intends to pay), and fraud in the subsequent performance (where the seller at some point elects not to fulfill its obligations)." Ibid.

We need not determine the soundness of this legal analysis because the facts in Weiss are significantly distinguishable

from those at hand. The court in Weiss found the CFA applied to allegations of fraudulent discontinuation of previously authorized benefits. The Court did not discuss the precedent we have cited, which excludes determination of initial coverage disputes. Nikiper, supra, 232 N.J. Super. at 401; Kuhnel, supra, 322 N.J. Super. at 582.

Myska and Wagner also maintain NJM's practice of failing to disclose an insured's right to seek compensation for diminution of value, not merely repair of their vehicles, fell within the ambit of the CFA. We disagree.

"[A]n insured is chargeable with knowledge of the contents of an insurance policy in the absence of fraud or inequitable conduct on the part of the carrier." Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 204 (App. Div.), certif. denied, 176 N.J. 278 (2003). "Normally, insurance purchasers are expected to read their policies and the law may fairly impose upon [them] such restrictions, conditions and limitations as the average insured would ascertain from such reading." Id. at 204-205 (alteration in original) (citations and internal quotation marks omitted). See also Millbrook Tax Fund, Inc. v. Henry & Assocs., Inc., 344 N.J. Super. 49, 53 (App. Div. 2001) ("[A] policy holder is obligated to read the policy he receives and is bound by the clear terms thereof").

Our final consideration concerns the arbitration provision contained within the Palisades policy. Todisco argues the trial court erred in dismissing his claims in their entirety in favor of arbitral review. Supplemental submissions filed by Todisco rely on Atalese, which defines the necessary requirements of a clause waiving one's right to sue in court, in favor of binding parties to pursue arbitration. Atalese, supra, 219 N.J. at 442-44. Atalese was decided after the trial court reviewed this matter, so the judge did not have the benefit of the Court's guidance.

In Atalese, the Court emphasized an arbitration clause in a contract must "assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Id. at 444 (citation and internal quotation marks omitted). "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have her claims and defenses litigated in court." NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 425 (App. Div.), certif. granted, 209 N.J. 96 (2011), appeal dismissed, 213 N.J. 47 (2013). The Court in Atalese has clarified the scope of this requirement in the context of arbitration clauses contained in consumer contracts. Atalese, supra, 219 N.J. at 442-43.

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Id. at 442 (quoting NAACP, supra, 421 N.J. Super. at 424). The mutual agreement must contain a provision waiving the right to pursue judicial determination of the parties' respective rights and responsibilities. Ibid. This is because "an average member of the public may not know — without some explanatory comment — that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Ibid. Therefore, "'[a]n effective waiver requires a party to have full knowledge of his [or her] legal rights and intent to surrender those rights.'" Ibid. (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). The Court emphasized:

> Our jurisprudence has stressed that when a contract contains a waiver of rights — whether in an arbitration or other clause — the waiver must be clearly and unmistakably established. Thus, a clause depriving a citizen of access to the courts should clearly state its purpose. We have repeatedly stated that [t]he point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue.
>
> [Atalese, supra, 219 N.J. at 444 (alteration in original) (citations and internal quotation marks omitted).]

We recite the entirety of the arbitration provision in the Palisades policy, found in Part E:

> If we and an insured do not agree whether that person is legally entitled to recover damages under this Part; or as to the amount of damages; either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.
>
> Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.
>
> Unless both parties agree otherwise, arbitration will take place in the county in which the named insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the three arbitrators will be binding as to:
>
> > 1. Whether the **insured** is legally entitled to recover damages; and
> >
> > 2. The amount of damages.
>
> The decision is binding only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of New Jersey. If the amount exceeds that limit, either party may demand the right to a trial for all issues of liability and damages. . . .

It is clear, the Palisades contract fails <u>Atalese</u>'s basic test. The language does not identify the insured's clear and unmistakable waiver of the right to seek determination of disputes in a judicial forum when choosing arbitration.

A-4398-13T4

<u>Atalese</u>, <u>supra</u>, 219 <u>N.J.</u> at 444. Accordingly, the arbitration provision in the Palisades contract is unclear and ambiguous, and, therefore, unenforceable. <u>Id.</u> at 448. <u>See also</u> <u>Dispenziere v. Kushner Cos.</u>, 438 <u>N.J. Super.</u> 11, 20 (App. Div. 2014) (invalidating an arbitration provision because it "failed to provide [the] plaintiffs any notice that they were giving up their right to seek relief in a judicial forum").

Despite the flaws of the Palisades arbitration clause, however, Todisco's action is not saved. As noted, Todisco produced no evidence he submitted a claim demanding payment for diminution of value damages. His February 15, 2013 letter contains no facts or monetary calculation. Further, Todisco did not comply with the subsequent requests for proof of loss, required by the claims provisions within Part F of his policy. Therefore, his claims for breach of contract cannot be sustained.

## III.

In summary, we find no flaw with the trial judge's determination to deny class certification or the procedure employed in that examination. We conclude the CFA does not apply to the dispute regarding payment or scope of coverage. Finally, although we find the arbitration clause in the Palisades policy is unenforceable, we nevertheless conclude

dismissal of Todisco's complaint was warranted based upon his noncompliance with the unambiguous claims procedure.

Affirmed, as modified.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION