NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3022-13T4

CHRISTINE A. DISPENZIERE,
DANIEL SANTO PIETRO, SUBRATA
CHOUDHURI, DAISY GONZALEZ,
MICHAEL & ELLA SHAYKEVICH,
ERIC & MICHAEL HORN, JOSEPH
& LINDA HORN, NEIL & LAUREN
HUNTER, JOHN & NANCY ENG,
RICHARD PAVLOWSKI, CHARLES
YAREMKO, RAO & VASUNDLARA
DESU, ROY & GLORYA MATTHEWS,
HERBERT LEARY and NICHOLAS JULIANO,

     Plaintiffs-Appellants,

and

INGRID ARMSTRONG, TRACY JORDAN,
BART & BIANCA KWIATKOWSKI,
DAVID MAYS, SUDHANSHU AND GEETI
SHUKLA, JENNIFER AND FRANCISCO
CHACON, and JAMES AND MARGARET
FLYNN,

     Plaintiffs,

v.

KUSHNER COMPANIES, WESTMINSTER
COMMUNITIES, WESTMINSTER REALTY,
LLC, THE LANDINGS AT HARBORSIDE,
LLC, THE LANDINGS, INC., LANDINGS
BUILDING 136A, LLC, LANDINGS
BUILDING 136B, LLC, and BUILDER
MARKETING SERVICES CO., INC.,

     Defendants-Respondents,

and

> **APPROVED FOR PUBLICATION**
>
> **November 21, 2014**
>
> **APPELLATE DIVISION**

INTEGRA MANAGEMENT CORP., and THE
LANDINGS AT HARBORSIDE MASTER
ASSOCIATION, INC.,

    Defendants.

_____

> Argued November 6, 2014 – Decided November 21, 2014
>
> Before Judges Waugh, Maven, and Carroll.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7384-12.
>
> Patrick J. Whalen argued the cause for appellants.
>
> Paul Bishop argued the cause for respondents (Brach Eichler LLC, attorneys; Mr. Bishop, Charles X. Gormally and Thomas Kamvosoulis, on the brief).

The opinion of the court was delivered by

CARROLL, J.A.D.

In Atalese v. United States Legal Services Group, L.P., 219 N.J. 430, 446 (2014), our Supreme Court recently held a contractual arbitration provision unenforceable because it lacked the necessary "clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief." In the present appeal, because we conclude that the arbitration provision upon which defendants rely suffers from the same infirmity, we reverse the trial court's February 11, 2014 order compelling plaintiffs to submit their claims to arbitration.

A-3022-13T4

We briefly summarize the most salient facts. Plaintiffs are twenty-two of thirty-three purchasers of condominium units in a real estate development in Perth Amboy known as "The Landings at Harborside" (The Landings). As currently comprised, The Landings consists of two buildings — the "Admiral" and the "Bayview." These plaintiffs purchased condominium units in the Admiral during 2004 through 2007. The remaining eleven plaintiffs purchased condominium units in the Bayview and are not part of this appeal.

According to plaintiffs' first amended complaint, filed on February 1, 2013, the Perth Amboy Redevelopment Agency (PARA) adopted a resolution in August 2000, authorizing the City of Perth Amboy to enter into a redevelopment agreement with defendant The Landings at Harborside, LLC. The resolution provided that the development was to be known as "The Landings," and would consist of, among other things: (1) "190,000 square feet of retail space"; (2) "2094 [u]nits of residential housing consisting of 98 townhomes, 102 row houses, and almost 1900 low-rise and mid-rise [c]ondominium homes"; (3) "[a] hotel"; (4) "2569 parking spaces"; (5) "[a] [c]ultural [c]ommunity [c]enter"; (6) "[a] public waterfront walkway"; and (7) "Gateway Festival Park and Founders Park."

In September 2000, Perth Amboy entered into a redevelopment agreement with The Landings at Harborside, LLC, designating it as the redeveloper. The project was allegedly marketed to plaintiffs and the general public as a $600 million mixed-use development that, as previously noted, would include townhouses, condominiums, retail space, and parks.

In 2004, defendant Landings Building 136A, LLC, issued a public offering statement (POS) concerning the Admiral, and began entering into agreements with plaintiffs for the purchase of condominium units in that building. The purchase agreement used in these transactions is a seventeen-page document. On the tenth page, in the same format as the preceding sections of the agreement, the following language regarding arbitration appears:

> 20. Disputes
>
> Any disputes arising in connection with this Agreement other than the failure to close title or in relation to any amendment to this Agreement either before or after closing of title (if not otherwise governed by the provisions of the homeowner's warranty provided by Seller at closing) or in relation to any of the warranties given by Seller pursuant to Paragraphs 21(B), 21(C), 21(D), 21(E), 21(G), 21(H), 21(I) and 21(J) of this Agreement, shall be heard and determined by arbitration before a single arbitrator of the American Arbitration Association in Morris County, New Jersey. The decision of the arbitrator shall be final and binding. Costs of arbitration shall be borne equally between the Seller

and the Purchaser. This clause shall survive closing of title.

In executing the purchase agreement, unit buyers also acknowledged receipt of the POS, as indicated in section thirty-six of the agreement.[1] The POS consists of approximately sixty-six pages, with approximately 450 pages of schedules. After the cover page and table of contents, on the fourth page of the document, there is a stand-alone page with centered, boldface type, and a capitalized heading with the words "SPECIAL RISKS." Beneath that, the following paragraph appears:

> Prospective purchasers should take note of the fact that Paragraph 20 of the Purchase Agreement (Schedule 10 to this Public Offering Statement) that purchasers will be required to sign should they wish to purchase a Unit within the Admiral, a Condominium, requires certain disputes which a purchaser may have with Landings Building 136A, L.L.C. be addressed through binding arbitration before a single arbitrator of the American Arbitration Association in Morris County, New Jersey. The decision of any such arbitrator will be final and binding and the costs of such arbitration will be borne equally by purchaser and Landings Building 136A, L.L.C.

---

[1] In opposition to defendants' motion to compel arbitration, sixteen of the twenty-two plaintiffs certified, however, that they had not received the POS when they executed the purchase agreement. Instead, the POS was not provided to them until closing which, they contend, constitutes a violation of the New Jersey Consumer Fraud Act.

A-3022-13T4

Plaintiffs allege that when they purchased their units, they were led to believe that they were to be part of "a large waterfront condominium community, which was to include diverse amenities, including a Community Center, a Health Club, a waterfront esplanade, [three] parks, and other recreational improvements, all of which were to be completed by 2012." By 2011, however, the project was scaled back, and the developers presented PARA with a proposal that plaintiffs maintain was "completely inconsistent with the development project promise[d] to and relied upon by [p]laintiffs who had already purchased their [u]nits." The revised proposal provided for rental housing instead of owner-occupied units and eliminated "nearly all of the promised amenities."

Plaintiffs contend that they reasonably relied on these promises and representations when they purchased their condominium units. They also allege that the buildings were negligently constructed. Plaintiffs' first amended complaint asserts claims for: (1) violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20; (2) negligence; (3) rescission; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) breach of warranty (7) breach of the implied warranty of habitability; (8) fraud

and misrepresentation; (9) promissory estoppel; and (10) unjust enrichment.

Defendants, who for purposes of this appeal are the project developer and its affiliated entities, moved to compel arbitration of the claims against them, relying upon the arbitration provision in the purchase agreements. Plaintiffs opposed the motion. Following oral argument, on November 8, 2013, the judge granted defendants' motion. A memorializing order was entered on February 11, 2014. Plaintiffs appeal, arguing, among other things, that the arbitration provision is unenforceable.

## II.

Orders compelling or denying arbitration are deemed final and appealable as of right. R. 2:2-3(a); GMAC v. Pittella, 205 N.J. 572, 587 (2011). Because the issue of whether the parties have agreed to arbitrate is a question of law, we review a judge's decision to compel or deny arbitration de novo. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). Therefore, "the trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Waskevich v. Herold Law, P.A., 431 N.J. Super. 293, 297 (App. Div. 2013) (citations and internal quotation marks omitted).

In fairness to the motion judge, when ordering plaintiffs' claims to arbitration, he did not yet have the guidance provided by the Court's decision in Atalese, which we find dispositive of the issues raised in this appeal. In Atalese, the plaintiff entered into a contract with defendant United States Legal Services Group, L.P. (USLSG) for debt-adjustment services. Atalese, supra, 219 N.J. at 446. An arbitration clause appeared on page nine of the twenty-three page contract, which provided:

> Arbitration: In the event of any claim or dispute between Client and the USLSG related to this Agreement or related to any performance of any services related to this Agreement, the claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request on the other party. The parties shall agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction. The conduct of the arbitration shall be subject to the then current rules of the arbitration service. The costs of arbitration, excluding legal fees, will be split equally or be born[e] by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees.
>
> [Id. at 437.]

After a dispute developed, plaintiff filed a complaint alleging that defendant violated the CFA and the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. Atalese, supra, 219 N.J. at 436. Defendant moved to compel arbitration based on the arbitration provision in the contract. Id. at 437. The trial court granted the motion, finding that the arbitration provision gave plaintiff sufficient notice that any disputes arising out of the agreement would be subject to arbitration. Ibid.

In an unpublished opinion we affirmed the trial court's order, concluding that "the lack of [an] express reference to a waiver of the right to sue in court or to arbitration as the 'exclusive' remedy [did not] bar [] enforcement of the [arbitration] clause." Atalese v. U.S. Legal Servs. Grp., L.P., No. A-0654-12 (App. Div. Feb. 22, 2013) (slip op. at 7-8). Despite not finding an explicit waiver of the plaintiff's right to sue in court, the panel was satisfied that the provision "clearly and unambiguously stated that . . . any dispute relating to the underlying agreement shall be submitted to arbitration and the resolution of that forum shall be binding and final." Id. at 8-9. Thus, the clause provided the parties "reasonable notice of the requirement to arbitrate all claims under the contract," and that "a reasonable person, by signing

the agreement, [would have understood] that arbitration [was] the sole means of resolving contractual disputes." Id. at 8.

In reversing, the Court first looked to customary contract principles regarding the requirement of mutual assent and a meeting of the minds. Atalese, supra, 219 N.J. at 442. It noted that:

> Mutual assent requires that the parties have an understanding of the terms to which they have agreed. An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights. By its very nature, an agreement to arbitrate involves a waiver of a party's right to have her claims and defenses litigated in court. But an average member of the public may not know -- without some explanatory comment -- that arbitration is a substitute for the right to have one's claim adjudicated in a court of law.

> Moreover, because arbitration involves a waiver of the right to pursue a case in a judicial forum, courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.

> [Id. at 442-43 (citations and internal quotation marks omitted).]

The Court explained that: "a clause depriving a citizen of access to the courts should clearly state its purpose. We have repeatedly stated that [t]he point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Id. at 444

(alteration in original) (citations and internal quotation marks omitted).  In sum, "[t]he waiver-of-rights language . . . must be clear and unambiguous[;] . . . the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum."  Id. at 445.

Applying these principles, the Court held the arbitration agreement unenforceable because it did not contain "any explanation that plaintiff [was] waiving her right to seek relief in court for a breach of her statutory rights."  Id. at 446.  Elaborating, the Court noted:

> The contract states that either party may submit any dispute to "binding arbitration," that "[t]he parties shall agree on a single arbitrator to resolve the dispute," and that the arbitrator's decision "shall be final and may be entered into judgment in any court of competent jurisdiction."  The provision does not explain what arbitration is, nor does it indicate how arbitration is different from a proceeding in a court of law.  Nor is it written in plain language that would be clear and understandable to the average consumer that she is waiving statutory rights.  The clause here has none of the language our courts have found satisfactory in upholding arbitration provisions -- clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief.  We do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration.  But the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is

> giving up her right to bring her claims in court or have a jury resolve the dispute. Mutual assent to an agreement requires mutual understanding of its terms. After all, [a]n effective waiver requires a [consumer] to have full knowledge of [her] legal rights before she relinquishes them.
>
> [Id. at 446-47 (alterations in original) (footnote omitted) (internal quotation marks omitted).]

In the present case, the arbitration provision in the purchase agreements is similarly devoid of any language that would inform unit buyers such as plaintiffs that they were waiving their right to seek relief in a court of law. Following Atalese, we deem this lack of notice fatal to defendants' efforts to compel plaintiffs to arbitrate their claims.

We recognize that the plaintiff in Atalese only sought recovery for violations of statutory rights under the CFA and the TCCWNA, whereas here plaintiffs' claims involve both statutory and common-law causes of action. However, we do not view this as a meaningful distinction, since we do not read Atalese as restricting its application to statutory claims. Rather, the Court was careful to mention both statutory rights granting citizens access to the courts and the more expansive right to a jury trial guaranteed by the New Jersey Constitution. Id. at 447, n.1. See also id. at 435 (noting that the requirement of a clear and unambiguous waiver has not only been

applied to arbitration provisions waiving a constitutional or statutory right, but has also been applied to any contractual waiver-of-rights provision).

In seeking to enforce the arbitration provision, defendants point out that many of the plaintiffs were represented by counsel when they executed their purchase agreements. Defendants argue that these purchasers therefore had an opportunity, through counsel, to fully review the arbitration provision, object to its inclusion in the purchase agreement, and terminate the contract if they were not satisfied. We do not find this argument persuasive.

First, as defendants acknowledge, not all plaintiffs were represented by counsel in their real estate transaction. Equally important, respecting those who were, defendants' argument runs counter to the weight of persuasive authority.

In Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282-83 (1993), the presence of an arbitration clause in a home construction contract did not preclude suit by a homeowner against the builder for construction defects, where it did not clearly express the election of arbitration as the sole remedy. Notably, the Court stated:

> When reading a contract, our goal is to discover the intention of the parties. Generally, we consider the contractual terms, the surrounding circumstances, and

the purpose of the contract. Here, we need not go beyond the actual terms of the agreement to find that it did not clearly express the election of arbitration as the sole remedy. In so finding, we are aware that Marchak was represented by counsel at all relevant times, including when he signed the "Contract for Sale of Real Estate." The problem, therefore, is not inequality of bargaining power between the parties. Rather, it is something more fundamental: the agreement simply does not state that the buyer elects arbitration as the sole remedy.

[Ibid.]

A similar argument was also rejected in Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A., 168 N.J. 124, 136 (2001), where, in the context of an employment agreement between a physician and a medical practice, the Court noted:

> Defendants suggest that the Court should focus predominately on plaintiff's level of sophistication to ensure that he acted of his own volition. That suggestion is misplaced. Irrespective of plaintiff's status or the quality of his counsel, the Court must be convinced that he actually intended to waive his statutory rights. An unambiguous writing is essential to such a determination.

[Ibid.]

Because we find this authority persuasive, if not binding, we reject defendants' contention that the presence of counsel during the real estate transaction suffices to cure the inadequacy of the contractual arbitration provision.

Summarizing, the arbitration provision in the parties' purchase agreements failed to provide plaintiffs any notice that they were giving up their right to seek relief in a judicial forum. This deficiency renders the provision unenforceable. Consequently, plaintiffs cannot be compelled to arbitrate their claims.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION