**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1412-24

JERMAINE J. WILLIAMS,
a/k/a JERMAINE WILLIAMS,
individually and on behalf of
all others similarly situated,

      Plaintiff-Appellant,

v.

AUTOBAY LLC and
SABIN KARAM,[1]

      Defendants-Respondents.

_____

        Submitted July 29, 2025 – Decided September 4, 2025

        Before Judges Rose and Marczyk.

        On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1593-23.

        Perlman DePetris Consumer Law LLC and Lewis G. Adler, attorneys for appellant (Paul DePetris, of counsel and on the briefs; Lewis G. Adler and Lee M. Perlman, of counsel).

_____

[1]  Improperly pled as Karime Sabine.

Marshall Dennehey, PC, attorneys for respondents (Douglas D. Suplee and Walter F. Kawalec, III, on the brief).

PER CURIAM

On leave granted, we consider plaintiff Jermaine J. Williams's appeal from the trial court's November 15, 2024 order denying class certification. After granting plaintiff's motion for partial summary judgment against defendants Autobay LLC (Autobay) and Sabin Karam, the trial court denied plaintiff's motions for class certification, finding plaintiff failed to demonstrate his claims were typical of the proposed class, R. 4:32-1(a)(3), and that individual claims predominated, R. 4:32-1(b)(3). Following our review of the record and the applicable legal principles, we affirm.

## I.

This matter stems from the sale of a used vehicle. In June 2022, plaintiff purchased a 2014 Mercedes from Autobay for $37,950. The parties executed a contract, titled "Buyer's Order," memorializing the sale.

The contract contained a section itemizing various fees and charges that comprised the purchase price of the vehicle. Notably, the purchase price included a "Total Documentary Fee" (documentary fee) of $599 and a "Temp[orary] Tag Fee" (tag fee) of $75. Plaintiff received a dealer-issued

A-1412-24

powertrain warranty for thirty days or 1,000 miles, whichever occurred first, and a limited warranty for six months or 6,000 miles.

In the months following the sale, plaintiff's vehicle underwent extensive repairs and maintenance, primarily at automobile service centers other than Autobay, such as a tire rotation in October, replacing one of the tires in November at a Mercedes dealership, and an oil change and tire rotation in December. In late December 2022, Pep Boys installed new brake pads, rotors, and three new tires, after which plaintiff started noticing the car would "wobble" when he drove it. In February 2023, plaintiff brought the vehicle to Pep Boys to correct "the wobbling."

In March 2023, plaintiff took the car to a Mercedes dealership after noticing a "grinding," and a "tapping and clicking noise while driving" and braking. The front axles of the vehicle required replacement, but plaintiff declined to do so at that time due to the high costs of the repairs. In early April, plaintiff again brought the vehicle to the Mercedes dealership to have the four wheels balanced.

Plaintiff returned to Autobay on April 12, seeking to address various problems with the vehicle. On April 24, Autobay performed a "[b]oot repair kit," which entailed removing and replacing the front boots of the vehicle.

3

Plaintiff testified at his deposition that he did not believe Autobay completed the April repairs. Throughout the month of May, Autobay performed additional repairs and inspections of the vehicle, including fixing a "rattling sound," and advising plaintiff that the car needed new brake pads and rotors.

On June 15, plaintiff took the vehicle to an auto repair shop after hearing "clanking" and "clunking" when starting the vehicle. The repair shop recommended fixing the "left cam[]shaft" and replacing the timing chain, but plaintiff did not have the work performed at that time. Nearly one week later, plaintiff went to another auto repair shop, which conducted a diagnostic for a camshaft repair and provided plaintiff with an estimate for the repairs.

Additional repairs and maintenance were performed on the vehicle between July and December 2023. Plaintiff testified, at some point thereafter, he accelerated the vehicle, and the check engine light illuminated, at which point the vehicle began shaking. Pep Boys could not diagnose the problem. The vehicle could not be driven and was eventually towed to plaintiff's home, where it remained inoperable since late January 2024. Plaintiff stated he planned to surrender the vehicle to the lender.[2]

---

[2] According to defendant, the vehicle has since been repossessed.

A-1412-24

Plaintiff certified that he then initially decided to sue Autobay because "Autobay apparently did not" repair the axle boot back in April 2023. He explained he began questioning why the repair shops diagnosed problems with the car that Autobay had purportedly repaired. In August 2023, plaintiff filed a twelve-count complaint comprised of class claims and individual claims pertaining to the contract, the sale of the vehicle, and the subsequent issues with the vehicle.

Plaintiff alleged that Autobay committed violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210, by: (1) charging plaintiffs a documentary fee without itemizing that fee, which violated the Automative Sales Practice Regulations (ASP), N.J.A.C. 13:45A-26B.2 to -26B.3, (Count Five); (2) making affirmative misrepresentations and engaged in unconscionable, abusive, fraudulent, and deceptive commercial practices by "overcharging plaintiffs" a $75 tag fee, N.J.S.A. 56:8-2, (Count Six); and (3) violating the New Jersey Truth-In-Consumer Contract, Warranty, and Notice Act (TCCWNA), N.J.S.A. 56:12-15, by offering to a consumer and entering into a consumer contract that "violates any clearly established legal right of a consumer or responsibility of a seller . . . [under] State or Federal law," (Count Seven).

A-1412-24

During discovery, defendants produced nine separate "Buyer's Order" contracts entered into with other consumers, which included similar documentary tag fees. In April 2024, plaintiff moved for partial summary judgment with respect to the alleged CFA violation pertaining to the documentary fee under Counts Five and Seven. In May 2024, plaintiff moved for class certification on Counts Five, Six, and Seven. The proposed class period spanned six years from August 15, 2023, when plaintiff filed the complaint, and covered all persons who purchased vehicles from Autobay.

The trial court heard argument on both motions in September 2024. On October 23, 2024, the court granted plaintiff's partial summary judgment motion, finding the documentary fee, without appropriate documentation itemizing that charge, constituted a per se violation of the CFA under Count Five. The court also granted summary judgment as to plaintiff's TCCWNA claim under Count Seven.

Next, the court addressed plaintiff's motion for class certification. During colloquy with counsel during oral argument, the court observed plaintiff's complaint primarily was focused on individual, rather than class-wide, issues. It reasoned plaintiff's individual interests and issues related to Autobay predominated because the class only would be impacted by three of the twelve

A-1412-24

counts in the complaint. The court noted it "ha[d] to take a pragmatic view of how this [case] would proceed as a class action" and that plaintiff initially sued Autobay based on his dissatisfaction with the repairs to the vehicle but subsequently "learned counsel figured out . . . there w[ere] . . . per se violations." However, the court questioned whether its granting of partial summary judgment would impact the concerns raised about the predominance and typicality requirements. Accordingly, the court reserved decision and permitted additional briefing on how and to what extent, if at all, the granting of summary judgment might affect the issue of class certification.

On November 15, 2024, following briefing, the court entered an order denying class certification, finding plaintiff failed to demonstrate the claims were typical of the proposed class, R. 4:32-1(a), and that plaintiff's individual claims predominated, R. 4:32-1(b)(3). Subsequently, we granted plaintiff leave to appeal from the denial of class certification.

II.

Plaintiff argues the trial court erroneously denied the motion to certify the class of individuals aggrieved by the documentary tag fees because class certification is routinely granted in overcharge cases where a dealer systematically fails to itemize fees in violation of the CFA. He maintains this

7

matter meets the prerequisites for class certification under Rule 4:32-1(a)(1) to (4), namely numerosity, commonality, typicality, and adequacy of the representation. Plaintiff also contends Rule 4:32-1(b)(3) is satisfied because issues common to the class predominate over any individual issues of a particular class member, and a class action is the superior method of litigation. Alternatively, plaintiff asserts that even if certification was not appropriate on all three counts, partial certification would be appropriate under Rule 4:32-2(d).

Defendant, in turn, argues the court properly denied plaintiff's motion for class certification because plaintiff failed to meet the typicality or predominance requirements in order to certify a class. Defendant also asserts plaintiff fails to demonstrate any entitlement to alternative class certification.

We review an order denying class certification for abuse of discretion. Dugan v. TGI Fridays, Inc., 231 N.J. 24, 50 (2017). Specifically, we "must ascertain whether the trial court has followed the[] standards [set forth in Rule 4:32-1] and properly exercised its discretion in granting or denying class certification." Lee v. Carter-Reed Co., LLC, 203 N.J. 496, 506 (2010). A trial court abuses its discretion when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Est. of Kotsovska by Kotsovska v. Liebman, 221 N.J.

568, 588 (2015) (quoting <u>Flagg v. Essex Cnty. Prosecutor</u>, 171 N.J. 561, 571 (2002)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." <u>Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth.</u>, 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting <u>Union Cnty. Improvement Auth. v. Artaki, LLC</u>, 392 N.J. Super. 141, 149 (App. Div. 2007)).

Plaintiff contends the trial court erred in finding typicality had not been met under <u>Rule</u> 4:32-1(a)(3). He asserts his violations are typical of the claims alleged in the class because both claims advance the same legal theories under the CFA and TCCWNA and involve the same factual circumstances regarding defendant's failure to itemize documentary fees. He also asserts his interests are aligned with the interests and incentives of the class.

Plaintiff further argues that issues common to the class predominate over individual issues of a particular class member because plaintiff sought class certification on ASP violations and N.J.S.A. 56:8-2 violations related to the tag fee overcharge. He maintains the ASP and tag fee overcharge claims present a "common nucleus of operative fact[]" and seek to redress a "common legal grievance," making this matter appropriate for class treatment.

"A 'class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."'" Dugan, 231 N.J. at 46 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 103 (2007)). A class action "furthers numerous practical purposes, including judicial economy, cost-effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations, and allocation of litigation costs among numerous, similarly-situated litigants." Ibid. (quoting Iliadis, 191 N.J. at 104).

The standard for whether a class should be certified is set forth in Rule 4:32-1. Four initial requirements, "frequently termed 'numerosity, commonality, typicality[,] and adequacy of representation,'" are set forth in subsection (a) of that Rule. Id. at 47 (quoting Lee, 203 N.J. at 519). Rule 4:32-1(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

A-1412-24

If the plaintiff satisfies each requirement under Rule 4:32-1(a), the trial court must next consider Rule 4:32-1(b).  Rule 4:32-1(b)(3) requires the court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  In the event the court denies class certification, the named plaintiff may continue to pursue the individual claims. See Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 465 (App. Div. 2015) (noting named plaintiffs' individual breach of contract claims proceeded despite affirming denial of class certification).

Under Rule 4:32-1(a)(3), a proposed class satisfies the typicality requirement if its claims "have the essential characteristics common to the claims of the class." In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 425 (1983) (quoting Moore's Federal Practice § 23.06-2 (1982)).  "If the class representative's claims arise from the same events, practice, or conduct, and are based on the same legal theory, as those of other class members, the typicality requirement is satisfied." Laufer v. U.S. Life Ins. Co. in City of New York, 385 N.J. Super. 172, 180 (App. Div. 2006) (quoting Moore's Federal Practice § 23.24[2]).

In Iliadis, the Court noted, "To establish predominance, a class representative must demonstrate 'that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.'" 191 N.J. at 108 (quoting R. 4:32-1(b)(3)).  That inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).

We are satisfied the court did not misapply its discretion in concluding plaintiff failed to satisfy the typicality and predominance requirements.  The court determined plaintiff's claims were not typical of the proposed class because the thrust of plaintiff's complaint focused on his allegations arising from his dissatisfaction regarding the repairs Autobay made to his vehicle.  The court noted only three of the complaint's twelve counts were asserted in the class-certification application.  The court essentially determined plaintiff's post-warranty repair claims were atypical of the other potential class members, and it observed a problem with certifying a class because plaintiff was focused on individual issues rather than class-wide issues.  We discern no basis to disturb the court's decision.

Because we affirm the trial court's decision regarding the typicality requirement, we need not address the predominance issue.  Nevertheless, we are

A-1412-24

satisfied the court did not mistakenly exercise its discretion in addressing this factor. The court noted that it "ha[d] to take a pragmatic view of how this [case] would proceed as a class action, and . . . having a lead plaintiff who [wa]s not at all interested" in the CFA issues, "it [wa]s completely legitimate to say he sued on something [else] and learned counsel figured out that there [were] . . . per se violations." The court continued, "But I don't know . . . if the [c]ourt can say . . . that's an appropriate circumstance where . . . this [p]laintiff's interest predominate[s] in a class full of individuals who were just impacted" by three of the twelve counts. Based on the court's findings, we are unconvinced it erred in concluding the predominance requirement was not satisfied.

To the extent we have not specifically addressed any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1412-24