**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1218-25

ADRIAN EVANS and KENNETH
HICKS, on behalf of themselves
and all other similarly situated
persons,

       Plaintiffs-Respondents,

v.

CITY OF PATERSON, PATERSON
FIRE DEPARTMENT,[1]

       Defendant-Appellant.

_____

       Submitted April 27, 2026 – Decided May 26, 2026

       Before Judges Sabatino, Natali and Bergman.

       On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1915-23.

       Taylor Law Group LLC, attorneys for appellant (Christopher J. Buggy and Jeremy C. Washington, on the briefs).

---

[1] We refer to the City of Paterson as "defendant" or "the City" as the Paterson Fire Department is part of the City and is not a separate governmental entity.

Sattiraju & Tharney, LLP, attorneys for respondents (Ravi Sattiraju, of counsel and on the brief; Brendan P. McCarthy, on the brief).

PER CURIAM

Defendant City of Paterson appeals from a Law Division order granting plaintiffs/firefighters Adrian Evans and Kenneth Hicks class certification under Rule 4:32-1 concerning a wage and hour dispute complaint filed on behalf of themselves and similarly situated firefighters. Defendant also appeals the trial court's order denying its motion for reconsideration. Based on our review of the record, the parties arguments, and the applicable legal principles, we affirm.

I.

Plaintiffs were employed as firefighters by the City and assigned to the Paterson Fire Division. Plaintiffs were also members of the Paterson Firefighters Association (the "Association"), which negotiated and entered into a collective bargaining agreement ("CBA") with the City regarding the terms and conditions of their employment. CBAs were entered into for the period from July 1, 2010 through June 30, 2019, and then renewed from July 1, 2019 through December 31, 2023.[2]

---

[2] On May 31, 2022, the City and the Association entered into a Memorandum of Agreement that made certain changes to the CBA, but the pertinent provision

Under Article XII Section A of the above-referenced CBAs, the work schedule for the firefighters was as follows:

> For Firefighters not assigned to the Chief's office, the work week schedule shall consist of twenty-four (24) hours on duty followed by seventy-two (72) hours off duty followed by twenty-four (24) hours on duty followed by seventy-two (72) hours off duty, etc.

Furthermore, Article XII Section C states:

> Any member [o]f this bargaining unit assigned to staff positions shall receive the same wages and benefits as those members assigned to the forty-two (42) hour work schedule.

In terms of overtime pay, Article XIII provides overtime compensation,

> approved in advance by the Fire Chief or the Fire Chief's designee through the approved chain of command[,] . . . will be paid at [one and one-half] at a rate determined by dividing by two . . . times the biweekly gross pay by one hundred sixty-eight . . . hours.

An employee chooses whether "[o]vertime at the end of the regular tour of duty [is] paid in cash or compensatory time," an award of "time off . . . in lieu of cash overtime payments," which is also accrued at "[one] and one-half . . . hours of [compensatory time] for each hour of overtime work."

---

in this appeal, Article XII, Section C, Article XIII Section A(1), and Article XXX Section C, remained unchanged.

3                                                                                    A-1218-25

Additionally, Article XIII places limitations on the amount of compensatory time an employee may accrue to a "maximum of sixty-four . . . clock hours" whereby an employee thereafter is "paid cash overtime payments for all approved overtime in excess of sixty-four clock hours maximum." Finally, in the event an employee denies an opportunity to work overtime, the CBA states they "shall be considered as having worked such overtime for the sole purpose of maintaining a proper order of rotation for future overtime assignments and is entitled to no overtime pay."

On July 17, 2023, plaintiffs filed a class action complaint alleging certain terms of the CBA violate their statutory rights under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a1 to -56a41, alleging it permits defendants to pay overtime compensation contrary to the requirements in the NJWHL. Plaintiffs claim they routinely worked over forty hours per week without receiving the statutorily required overtime payment.

The putative class was defined as "all individuals employed by the City whose primary responsibility was to perform firefighting duties, including those with titles 'firefighter, captain and battalion chief' from July 2017 through the present."

A-1218-25

On September 26, 2023, Paterson moved to dismiss plaintiffs' complaint pursuant to Rule 4:6-2(a) for lack of subject matter jurisdiction and to compel arbitration in accordance with the CBA, and Rule 4:6-2(e) for failure to state a claim under the NJWHL. Relying on Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 441 (2014), plaintiffs contended the "CBA says the contract is not intended and shall not be construed as a waiver of any right or benefit to which employees are entitled by law." Plaintiffs further asserted its NJWHL claim presented "legal issue[s] that the [c]ourt ha[d] to decide . . . [and] not . . . issue[s] that [could] be determined by an arbitrator at arbitration." The trial court granted the City's motion and denied plaintiffs' subsequent motion for reconsideration. Plaintiff appealed, and we reversed and remanded, concluding "plaintiffs were not required to exhaust the administrative remedies available to them prior to filing their complaint." Evans v. City of Paterson, No. A-1818-23 (App. Div. Jan. 28, 2025) (slip op. at 17) (Evans I). Following remand, the City filed its answer and affirmative defenses on February 27, 2025.

In August 2025, plaintiffs moved for class certification and the City opposed. Following oral argument, the trial court granted plaintiffs' motion and defined the class as follows:

> All individuals employed by Defendant, City of Paterson, whose primary responsibility was to perform

firefighting duties, including all individuals with the title firefighter, captain and battalion chief, from July 2017 through to the present.

In its order, the trial court designated plaintiffs Evans and Hicks as representatives of the class.

After granting class certification, the trial court issued a written opinion detailing its reasons for granting class certification under Rule 4:32-1(a). It found numerosity, commonality, typicality, and adequacy of representation were satisfied, relying on defendant's failure to respond to plaintiffs' requests for admissions and the common employment conditions.

Concerning Rule 4:32-1(b), the trial court held that the common questions in the case predominate over the individual ones and that a class action is the superior method for resolving the controversy satisfying subsection (b)(3) of the Rule. Plaintiffs argued that individual filings over the two common class questions would waste judicial resources. The trial court agreed, stating, "on balance, permitting class certification will best promote judicial efficiency and the effective use of judicial resources, as it avoids the risk of inconsistent outcomes and lack of uniformity."

Defendant moved for reconsideration and plaintiffs opposed. In defendant's reply brief, it raised new arguments concerning amendments made

6

to the definitions section of the NJWHL and that the class definition ordered should not have included certain persons as per the amendments to the NJWHL. In a written order, the trial court denied defendant's motion for reconsideration; reaffirming its prior findings and holding that the requirements for class certification were satisfied. The trial court did not address defendant's arguments that were first raised in its reply brief, determining the arguments were not properly brought before the court.

On appeal, defendant contends: (1) class certification was premature; (2) the trial court improperly defined the class; (3) the trial court erred in ruling plaintiffs established all prerequisites for class certification pursuant to Rule 4:32-1(a); and (4) the trial court erred in determining that plaintiffs had established predominance and superiority under Rule 4:32-1(b).

II.

We review an order granting class certification for an abuse of discretion. Dugan v. TGI Fridays, Inc., 231 N.J. 24, 50 (2017). Specifically, we "must ascertain whether the trial court has followed [the standards set forth in Rule 4:32-1] and properly exercised its discretion in granting or denying class certification." Lee v. Carter-Reed Co., LLC, 203 N.J. 496, 506 (2010). A trial court abuses its discretion "when a decision is 'made without a rational

explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Est. of Kotsovska by Kotsovska v. Liebman, 221 N.J. 568, 588 (2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

## A.

We begin by addressing defendant's initial argument that the trial court erred by granting plaintiffs' motion for class certification because their request was premature. At the time the trial court granted class certification, no formal discovery had taken place. The City argues that "discovery is required regarding all of the [Rule] 4:32-1(a) and (b) requirements." We are unpersuaded by defendant's argument.

In Myska v. New Jersey Mfrs. Ins. Co., "we flatly reject[ed] [the request] to impose a bright-line rule prohibiting examination of the propriety of class certification until discovery is undertaken." 440 N.J. Super. 458, 478 (App. Div. 2015) (citing Local Baking Products, Inc. v. Kosher Bagel Munch, Inc., 421 N.J.

Super. 268, 280 (App. Div. 2011)).  We held that "the test does not merely turn on the state of the litigation . . . [r]ather, dismissal is dependent on the nature of the claims and the propriety of their presentation as a class action, in accordance with the provisions of Rule 4:32-1."  Id. at 477-78.  Here, we are satisfied, as pled in their complaint, that the nature of plaintiffs' claims related to alleged violations of the NJWHL for themselves and other similarly situated firefighters governed by the CBA was sufficient on its face to satisfy the rule.

B.

We next address defendant's contention that the trial court improperly defined the proposed class.  Defendant argues that (1) February 4, 2019 is the earliest date that plaintiffs and the class members' claims could have arisen because that is the effective date of the amendment of the definition section of the NJWHL to include public entity employees; and (2) the class definition should not include battalion chiefs and captains because those are executive positions, which are exempt from the overtime requirement under the NJWHL.

We initially point to the fact that defendant raised these arguments in its reply brief in its motion for reconsideration.  Although this issue was discussed at oral argument, the record reflects that the discussion centered around whether it was fair for the court to hear this issue, especially since plaintiffs had no

9

opportunity to adequately respond to the arguments. The trial court ultimately determined defendant's contention "may be properly asserted as a defense to the overall action . . . rather than challenging the issue within the reconsideration of the class certification decision." The court thus concluded it would not make any substantive findings on the issue, as it was not properly raised. We agree.

"Raising an issue for the first time in a reply brief is improper." Berardo v. City of Jersey City, 476 N.J. Super. 341, 354 (App. Div. 2023) (quoting Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596, 767 A.2d 1030 (App. Div. 2001)). "[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). Based on the above holdings, we conclude the trial court did not abuse its discretion by determining it would not address this issue first raised in defendant's reply brief.

Additionally, even when deciding this issue on its merits, class certification presupposes the existence of a properly defined class. Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 106 n.2 (2007). Although our courts do not

10

require that every class member be ascertainable before certification is permitted, a proposed class still must be "properly defined." Ibid. Thus, "[e]ven before one reaches the four prerequisites for a class action, there must be an adequately defined class." Ibid. (alterations in original) (citations omitted). "[T]he proposed class must be sufficiently identifiable without being overly broad" and "may not be amorphous, vague, or indeterminate" but "administratively feasible to determine whether a given individual is a member of the class." Ibid. (citations omitted).

Concerning this point, our Supreme Court has held, in a class action, the ultimate factual issues are not decided when a trial court considers whether to grant or deny class certification, when it stated:

> [i]n deciding whether to grant or deny class certification, a trial court does 'not decid[e] the ultimate factual issues' underlying the plaintiff's cause of action . . . [r]ather, at the class certification stage, a court must 'accept as true all of the allegations in the complaint' . . . and consider [any] remaining pleadings, discovery (including interrogatory answers, relevant documents, and depositions), and any other pertinent evidence in a light favorable to plaintiff[.]
>
> [Lee, 203 N.J. at 505 (internal citations omitted).]

Should there be any factual issues regarding the defined class, the trial court may later alter or amend the class to accommodate such issues. See R. 4:32-2;

11

see also Iliadis, 191 N.J. at 106 n.2 (agreeing with the trial court's determination that a "class may later be altered or amended to accommodate any definitional problems.").

Here, the trial court defined the class as:

> All individuals employed by Defendant, City of Paterson, whose primary responsibility was to perform firefighting duties, including all individuals with the title firefighters, captain and battalion chief, from July 2017 through to the present[.]

Defendant argues that this definition is legally and factually incorrect. In response, plaintiffs point to the certifications submitted showing that captains and battalion chiefs regularly performed firefighting duties and were paid full-time uniformed firefighters who were subject to the terms and conditions in the CBA.

In accordance with the deferential standard that applies, we conclude the trial court did not abuse its discretion in defining the class based on the evidence before it, including the factual bases in plaintiffs' complaint. Defendant's contentions are premature at this stage of the litigation because they venture beyond the factual assertions of the class set forth in the complaint and the submitted evidence, including the factual assertions deemed admitted based on defendant's failure to respond to plaintiffs' Requests for Admissions.

A-1218-25

## C.

We next turn to defendant's contention that the court erred in granting class certification because plaintiffs failed to satisfy all of the requirements set forth in Rule 4:32-1. In summary, defendant asserts the trial court did not conduct a thorough analysis of the facts and evidence and did not have sufficient evidence to support its ruling due to the lack of discovery.

"A 'class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."'" Dugan, 231 N.J. at 46 (quoting Iliadis, 191 N.J. at 103). A class action "furthers numerous practical purposes, including judicial economy, cost-effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations, and allocation of litigation costs among numerous, similarly-situated litigants." Ibid. (quoting Iliadis, 191 N.J. 104). The court "must undertake a 'rigorous analysis' to determine if the Rule's requirements have been satisfied." Iliadis, 191 N.J. at 106-07. If the allegations in the complaint do not lend themselves to class certification, dismissal of the class action allegations is appropriate. Myska, 440 N.J. Super. at 477. When a court denies class certification, it would not "prevent any party's singular pursuit of relief," if appropriate. See id. at 466.

A-1218-25

There are four initial requirements for class action certification, "frequently termed 'numerosity, commonality, typicality[,] and adequacy of representation,'" as set forth in Rule 4:32-1(a). Dugan, 231 N.J. at 47 (quoting Lee, 203 N.J. 519). The Rule provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> [R. 4:32-1(a).]

All four requirements of subsection (a) must be satisfied to maintain a class action. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 173 (2021).

If the plaintiff satisfies each requirement under Rule 4:32-1(a), the motion court must next consider Rule 4:32-1(b). That Rule requires the court find:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk either of:
>
> > (A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or

14

(B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability in concentrating the litigation of the claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

[R. 4:32-1(b).]

15

The party seeking class certification bears the burden of proof in establishing the requirements of Rule 4:32-1. Myska, 440 N.J. Super. at 475.

We address the prongs of Rule 4:32-1(a) in turn, applying the evidence in the motion record.

Numerosity

Class actions were "'an invention of equity' that enabled litigation to proceed 'in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable.'" Iliadis, 191 N.J. at 103 (quoting Hansberry v. Lee, 311 U.S. 32, 41 (1940)). Class actions typically involved large numbers of potential claimants. E.g., Dugan, 231 N.J. at 64 (263,000 class members); Lee, 203 N.J. at 512 (10,000 class members); In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 425 (1983) (7,500 class members); Delgozzo v. Kenny, 266 N.J. Super. 169, 184 (App. Div. 1993) (35,000 class members); Atl. Ambulance Corp. v. Cullum, 451 N.J. Super. 247, 252 (App. Div. 2017) (36,000 class members); Lusky v. Capasso Bros., 118 N.J. Super. 369, 372 (App. Div. 1972) (7,000 class members).

However, New Jersey courts have not set a numerical requirement to meet the numerosity prerequisite. Our Supreme Court recently spoke on this issue in

16

Baskin reiterating this point. The Court noted that "Rule 4:32-1 does not specify a minimum number of class members necessary to satisfy the numerosity requirement . . . ." Baskin, 246 N.J. at 173. Instead, the Court looked to federal standards for numerosity, stating "'[a]s a general rule . . . classes of [twenty] are too small, classes of [twenty]-[forty] may or may not be big enough depending on circumstances of each case, and classes of [forty] or more are numerous enough.'" Ibid. (alteration in original) (citing In re Toys "R" Us, 300 F.R.D. 347, 367-68 (C.D. Cal. 2013)).

The trial court agreed with plaintiffs' assessment that the numerosity requirement was admitted based on defendant's failure to respond to question three of plaintiffs' Requests for Admissions. Question three stated that "[f]rom 2017 through the present, [the City] has employed more than forty (40) firefighters within the Paterson Fire Division." This question went unanswered, which results in the numerosity requirement being undisputed as admitted.

Rule 4:22-1, governing requests for admissions, allows a party to seek "the truth of any matter of fact within the scope of R[ule] 4:10-2 . . . ." "The matter is admitted unless, within [thirty] days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . ." "The

purpose of a request for admissions is to establish matters to be true for purposes of trial when there is not a real controversy concerning them[,] yet their proof may be difficult or expensive." Essex Bank v. Capital Resources Corp., 179 N.J. Super. 523, 532 (App. Div. 1981).

Because the class size was at least forty members, the trial court found that such a class size would render joinder "impracticable," and that requiring the proposed members to pursue individual claims would be "financially impracticab[le]." Additionally, the trial court determined the identities of other class members may be easily determined if defendant discloses such information. The trial court lastly found that defendant has not identified any additional discovery that would further address or challenge this issue.

Defendant argues that an "in-depth" analysis is required and that the trial court simply relied on plaintiffs' proffer of the number of potential plaintiffs without more. Notwithstanding the fact that defendant has not provided what additional information concerning the numerosity requirement would be gleaned through further discovery, we conclude, as found by the trial court, its failure to respond to plaintiffs' Requests for Admissions is dispositive of the issue. By admitting that over forty fire fighters were employed by the City since 2017, we

conclude the amount of forty fire fighters satisfies the numerosity requirement as determined by the court and there was no abuse of discretion.

Typicality

Typicality requires the claims asserted by the plaintiff "have the essential characteristics common to the claims of the class." In re Cadillac, 93 N.J. at 425 (quoting 3B Moore's Federal Practice ¶ 23.06-2 (1982)). "If the class representative's claims arise from the same events, practice, or conduct, and are based on the same legal theory, as those of other class members, the typicality requirement is satisfied." Laufer v. U.S. Life Ins. Co. in City of N.Y., 385 N.J. Super. 172, 180-81 (App. Div. 2006) (quoting 5 Moore's Federal Practice ¶ 23.24[2] (3d ed. 1997)).

The trial court held that the typicality requirement was satisfied because "[p]laintiffs and [the] Putative Class Members are employed by [d]efendant and as such are subject to the same work requirements, including similar work schedules." Defendant argues that by failing to allow for pre-certification discovery, there were insufficient proofs for the trial court to find that the typicality requirement was satisfied.

Again, defendant failed to show how additional discovery would aid in the resolution of the typicality requirement. Furthermore, as defendant is the

19

current employer of plaintiffs and the other class members, it was in possession of information relevant to this requirement, yet failed to provide a factual basis to support its argument.

We conclude because the trial court properly relied on plaintiff's complaint in determining the named plaintiffs and the class members are similarly situated; there was a rational basis for holding that the typicality requirement was satisfied. For these reasons, the trial court did not abuse its discretion.

Adequacy of Representation

Generally, a "class [representative] 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 343 (2010) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)). A class representative must "be able to 'fairly and adequately protect the interests of the class[,]' as required by Rule 4:32-1(a)(4)." Laufer, 385 N.J. Super. at 181. This requirement is "closely related to the requirement of typicality." Id. at 182. "To satisfy this requirement, 'the plaintiff must not have interests antagonistic to those of the class.'" Ibid. (citing Delgozzo v. Kenny, 266 N.J. Super. 169, 188 (App. Div. 1993)). However, those interests need not be identical. Id. (citing Moore's Federal

Practice § 23.25[4][b][i]). "[T]he named representative only needs to be adequate[.]" Ibid.

Courts also consider whether the potential class members have individual recourse to represent their own interests. Class actions are appropriate where individual clams "are, in isolation, 'too small . . . to warrant recourse to litigation.'" Iliadis, 191 N.J. at 104 (quoting In re Cadillac, 93 N.J. at 435). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchem Prods. Inc., 521 U.S. at 617 (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)). Class actions also serve to equalize adversaries, "a purpose that is even more compelling when the proposed class consists of people with small claims." Little v. Kia Motors Am., Inc., 242 N.J. 557, 581 (2020). Equalization "remedies the incentive problem facing litigants who seek only a small recovery." Muhammad v. Cnty. Bank of Rehobeth Beach, 189 N.J. 1, 17 (2006).

In this instance the trial court found that the adequacy requirement was satisfied for the same reasons it found that plaintiffs met the typicality requirement. The named class representatives were firefighters that alleged they were wrongfully denied wages for hours worked in excess of forty hours per

21

week, the same as the remainder of proposed class members. We conclude, based on the factual assertions of the complaint, plaintiffs representatives were adequately defined, both being firefighters that allegedly worked over forty hours per week and the trial court did not abuse its discretion in determining plaintiffs met the adequacy of representation prong of the cited rule.

Commonality

Commonality depends on whether a "common nucleus of operative facts" controls the outcome of the class members' claims. In re Cadillac, 93 N.J. at 431. "Although all issues need not be identical among all class members, common questions must predominate." Carroll v. Cellco P'ship, 313 N.J. Super. 488, 499 (App. Div. 1998). "Commonality is not affected by the fact that each of the plaintiffs in the class must prove individual damages." R. 4:32-5, n.2.2.3 (citing Lee, 203 N.J. at 531).

The factual assertions plaintiffs alleged were common to all class members were:

> 1. Whether [p]laintiffs and the class members were paid overtime after they worked forty (40) hours per week?
>
> 2. Whether [d]efendant was required to pay overtime to [p]laintiffs and the class members after they worked forty (40) hours per week under the NJWHL?

22

Although defendant concedes that all plaintiffs assert violations of the NJWHL, it argues that the trial court erred by failing to conduct a more thorough analysis of individual questions. However, the individual questions that defendant refers to appear to simply be the amount of damages each plaintiff has suffered. Defendant asserted there were multiple individual issues of fact and law that predominate over common ones, including:

> (1) the number of hours worked by each putative class member; (2) the number of hours of compensation time provided; and (3) the number of hours of overtime paid.

We determine these individual issues relate to the quantity of damages each plaintiff has suffered, which we deem irrelevant to the commonality issue. Because the damages caused by defendant's alleged violations of the NJWHL were common to all class members, we conclude the trial court did not err in finding the commonality element was satisfied.

D.

We now turn to defendant's contention that the trial court erred in finding plaintiffs satisfied the requirements of Rule 4:32-1(b), determining that plaintiffs had established predominance and superiority. Defendant argues that the trial court based its holding solely on the claims of unpaid overtime stemming from a common employment policy and that the court's analysis was

23

insufficient.  Defendant also asserts a substance-based argument regarding the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and that this Act should have guided the court's analysis.  We conclude these arguments lack merit.

If a determination is made that a plaintiff has satisfied the four prerequisites under Rule 4:32-1(a), the court must then consider the criteria set forth in Rule 4:32-1(b).  "To determine predominance under subsection (b)(3), the court decides 'whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."'"  Dugan, 231 N.J. at 48 (citing Iliadis, 191 N.J. at 108).  Cohesion does not require that there be no individual issues, that resolution of common issues will resolve the entire dispute, or that class members be affected in exactly the same way.  Ibid.

Nonetheless, "[t]he predominance factor . . . is far more demanding than Rule 4:32-1(a)(2)'s requirement that there be questions of law or fact common to the class."  Ibid. (citations omitted).  When considering the question of predominance, a court "should conduct a 'pragmatic assessment' of various factors."  Lee, 203 N.J. at 519 (citing Iliadis, 191 N.J. at 108).  Such an evaluation includes "a qualitative assessment of the common and individual questions rather than a mere mathematical quantification of whether there are

more of one than the other." Id. at 519-20 (citing Iliadis, 191 N.J. at 108). That is because "the answer to the issue of predominance is found . . . in a close analysis of the facts and law." Iliadis, 191 N.J. at 109 (alteration in original) (quoting In re Cadillac, 93 N.J. at 434).

Rule 4:32-1(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In making that inquiry, a court "must undertake '(1) an informed consideration of alternative available methods of adjudication of each issue, (2) a comparison of the fairness to all whose interests may be involved between such alternative methods and a class-action, and (3) a comparison of the efficiency of adjudication of each method.'" Dugan, 231 N.J. at 49 (quoting Iliadis, 191 N.J. at 114-115). "In making the predominance and superiority assessments, a certifying court must undertake a 'rigorous analysis' to determine if the Rule's requirements have been satisfied." Iliadis, 191 N.J. at 106-107 (quoting Carroll, 313 N.J. Super. at 495).

In its initial decision, concerning the predominance element, the court found that the claims of unpaid overtime stem from a common employment policy under the CBA. The court further determined that plaintiffs' and all putative class members' claims arose from their employment at the Paterson Fire

Division and involved two common questions, which the court concluded directly implicate the entire putative class and that the only differences between the claims are the damages sustained. The court found that the common questions that predominate over individual ones were: (1) whether plaintiffs and the putative class members were paid overtime after they worked forty hours per week; and (2) whether defendant was required to pay overtime to plaintiffs and the putative class members after they worked forty hours per week under the NJWHL.

As to the superiority element, the court determined class certification will best promote judicial efficiency and the effective use of judicial resources, as it avoids the risk of inconsistent outcomes and lack of uniformity. The court reasoned that the filing of individual actions to answer the two common class questions would be a waste of judicial resources and concluded that a class action is the superior method for resolving the controversy.

On reconsideration, the court supplemented it original findings, first stating that it undertook a "rigorous analysis" in determining that the predominance requirement was satisfied because the claims of unpaid overtime stem from a common employment policy under the CBA and plaintiffs' claims are common to all members, with the only differences being the damages

26

sustained. The court rejected defendant's argument that individual issues—including FLSA regulations, accrual, and compensatory time—predominate, finding instead that the essential claims and facts are shared by all class members.

As to the superiority element, on reconsideration, the court analyzed alternative methods of adjudication and found that a class action is superior because judicial economy and fairness support class litigation, and that manageability concerns do not outweigh the benefits of class certification. The court further found that individual class members lacked financial wherewithal to pursue separate claims, making it financially impractical for them. The court added that individual lawsuits would be less efficient and risk inconsistent outcomes because the alternative to a class action would be over forty, and up to one hundred individual lawsuits involving duplicative issues, which would unreasonably burden the court system.

The court rejected defendant's contention that plaintiffs' claims could be asserted through the Union at no cost, which it found was unsupported by documentation or under the terms of the CBA. The court also determined that plaintiffs were not required to exhaust administrative remedies, as we previously held in our prior remand.

27

After our review of the record and findings by the court, we conclude its two written decisions, in combination, made exhaustive factual findings and applied the correct legal principles as set forth in Rule 4:32-1(b) to support its determination to certify the class. Both of the court's decisions set forth several reasons outlining how the factual allegations in plaintiff's complaint satisfied subsection (b)(3)'s requirements and were supported by substantial evidence in the record. As such, the court's findings were not an abuse of discretion.

To the extent we have not addressed any of defendant's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division